

WILLIAM P. DENI, JR.
Director

Gibbons P.C.
One Gateway Center
Newark, New Jersey 07102-5310
Direct: (973) 596-4853 Fax: (973) 639-8373
wdeni@gibbonslaw.com

May 27, 2020

**VIA ECF**

Honorable Jed S. Rakoff, U.S.D.J.
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

**Re: *Carnegie, et al. v. Pure Grown Diamonds, Inc., et al.*, Case No. 20-cv-0189 (JSR)**

Dear Judge Rakoff:

Plaintiffs should be required to produce discovery on all manufacturing processes related to the patents-in-suit. Plaintiffs alone possess this discovery, which bears on fundamental issues at the heart of this case: the validity of the patents-in-suit, their infringement, and the requested relief—a reasonable royalty and a permanent injunction. In the alternative, Plaintiffs should be required to stipulate that (1) they never practiced the asserted claims and (2) either they never tried to practice the asserted claims or they tried but failed.

## I. Plaintiffs' Manufacturing Processes Are Relevant to Their Claim to Relief

Plaintiffs have decided to forgo lost profits and have instead requested relief in the form of a reasonable royalty. A reasonable royalty is "the royalty rate to which the parties would have agreed had they negotiated an agreement prior to infringement." *ResQNet.com, Inc. v. Lansa, Inc.*, 828 F. Supp. 2d 688, 692 (S.D.N.Y. 2011). To assess such a hypothetical negotiation, "courts rely on the comprehensive, if overlapping, list of fifteen factors . . . often termed the '*Georgia-Pacific* factors.'" *Id.* (citing *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970). Plaintiffs' manufacturing processes are necessary to evaluate at least four of those factors: (1) "The nature of the patented invention; the character of the commercial embodiment of it as owned and produced by the licensor; and the benefits to those who have used the invention"; (2) "The established profitability of the product made under the patent; its commercial success; and its current popularity"; (3) "The utility and advantages of the patent property over the old modes or devices, if any, that had been used for working out similar results"; and (4) "The portion of the realizable profit that should be credited to the invention as distinguished from non-patented elements, the manufacturing process, business risks, or significant features or improvements added by the infringer." *Georgia-Pacific*, 318 F. Supp. at 1120 (factors 8-10 and 13); *see also Flexiteek Ams., Inc. v. Plasteak, Inc.*, 2013 WL 12090042, at *7 (S.D. Fla. June 14, 2013) (finding such discovery "relevant to determining a reasonable royalty").

Plaintiffs have also requested relief in the form of a permanent injunction. Whether Plaintiffs' manufacturing processes practice the patents-in-suit factors into that analysis as well. "Although a patentee's failure to practice an invention does not necessarily defeat the patentee's claim of irreparable harm, *the lack of commercial activity by the patentee is a significant factor in the calculus*." *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1556 (Fed. Cir. 1995) (emphasis added). Plaintiffs' manufacturing processes are also relevant to infringement, as they contend the "quality and structure" of Defendants' products alone show they must have been made using the patented processes. Clive Hill, the President and founder of Washington Diamonds (now M7D Corp.), recently echoed that notion: "What Carnegie did is they established the conditions that you could [grow diamonds] to a reasonable size . . . . That is

patented. We [believe] that you cannot grow CVD outside those conditions."[1] Further, Plaintiff M7D Corporation represents itself as a licensee of the patents-in-suit and implies that it grew the world's largest CVD diamond using the patented technology. *See* Compl. ¶¶ 6-7, ECF No. 1. Defendants should be allowed to test these propositions by receiving discovery into whether and how Plaintiffs allegedly practice the asserted patents. Moreover, Plaintiffs contend that Defendants infringe under the doctrine of equivalents. Whether and how Plaintiffs practice the asserted claims bears directly on this analysis. *See, e.g., Ferring B.V. v. Barr Labs., Inc.*, 2005 WL 437981, at *17 (S.D.N.Y. Feb. 7, 2005) ("Court could not in logic conclude that Defendant infringes a patent, even by equivalents, by producing the same product as Plaintiffs who don't practice their own invention."); *Flexiteek*, 2013 WL 12090042, at *7 (plaintiffs' manufacturing process relevant to doctrine of equivalents).

## II. Plaintiffs' Manufacturing Processes Are Relevant to Defendants' Invalidity Case

Plaintiffs' manufacturing processes are also relevant to Defendants' invalidity defenses, which include obviousness and non-enablement. The obviousness analysis considers objective indicia of non-obviousness, such as the commercial success or unexpected results of the patented processes. *See Apple Inc. v. Samsung Elecs. Co., Ltd.*, 839 F.3d 1034, 1052 (Fed. Cir. 2016) (commercial success); *In re Huai-Hung Kao*, 639 F.3d 1057, 1068 (Fed. Cir. 2011) (unexpected results). For such evidence to have weight, there must exist "a nexus between the evidence and the merits of the claimed invention." *ClassCo, Inc. v. Apple, Inc.*, 838 F.3d 1214, 1220 (Fed. Cir. 2016). Evidence regarding Plaintiffs' manufacturing processes can show whether such a nexus exists. *See ArcelorMittal v. AK Steel Corp.*, 2019 WL 486886, at *9 (D. Del. Feb. 7, 2019) ("[S]ummary judgment of invalidity was . . . appropriate because Plaintiffs did not dispute that the trial record showed their own product . . . lacked the requisite nexus for commercial success . . . ."). Moreover, Plaintiffs' failed attempt to practice the patents-in-suit would be "strong evidence" that they lack enablement. *Ormco Corp. v. Align Tech.*, 498 F.3d 1307, 1319 (Fed. Cir. 2007).

## III. Plaintiffs' Arguments Against Compelling Discovery Are Unavailing

Other courts routinely grant discovery of a plaintiff's products and manufacturing processes. *See, e.g.*, *Flexiteek*, 2013 WL 12090042, at *7; *Dentsply Int'l Inc. v. US Endodontics, LLC*, 2016 WL 6088476, at *4-5 (E.D. Tenn. May 23, 2016). Plaintiffs' arguments against a similar outcome, advanced at the May 22 teleconference with the Court, are unavailing. In fact, the very case they cited as support contradicts their position. *See Dentsply*, 2016 WL 6088476, at *5 ("[T]o the extent to which [defendant] asks for [plaintiff's] manufacturing process as it pertains to the patents-in-suit, its motion is GRANTED."). Here, the scope of the requested discovery is narrowly tailored to the patents-in-suit and presents no more burden than Plaintiffs' discovery requests to Defendants. And there is no alternate source for this information.

Finally, Plaintiffs' argument that the requested discovery could implicate their trade secret information is no justification for failing to produce it. *See Flexiteek*, 2013 WL 12090042, at *7, *13 (compelling production of "trade secrets and sensitive commercial information"). Defendants are required to produce (and have produced) equally sensitive information. The solution to Plaintiffs' concern is an amendment to the Protective Order. To the extent necessary, Defendants are willing to work with Plaintiffs on reasonable amendments. Expert access to Plaintiffs' trade secret information is not a legitimate concern because the experts, like counsel, must adhere to the Protective Order under pain of contempt of Court. *See* Protective Order at 1, ECF No. 42.

---

[1] https://www.jckonline.com/editorial-article/lab-grown-diamond-fights-patents

Respectfully submitted,

s/ William P. Deni, Jr.
William P. Deni, Jr.
J. Brugh Lower
**GIBBONS P.C.**
One Pennsylvania Plaza, 37th Floor
New York, NY 10119-3701
Tel: (212) 613-2000
Fax: (212) 290-2018
wdeni@gibbonslaw.com
jlower@gibbonslaw.com

Anand K. Sharma (*pro hac vice*)
J. Preston Long (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP**
901 New York Avenue, NW
Washington, DC 20001
Tel: (202) 408-4000
Fax: (202) 408-4400
anand.sharma@finnegan.com
j.preston.long@finnegan.com

*Attorneys for Defendants Pure Grown Diamonds, Inc. and IIA Technologies Pte. Ltd.*

cc: All counsel of record (via ECF)