**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CARNEGIE INSTITUTION OF
WASHINGTON and M7D CORPORATION,

                Plaintiffs,

        v.

PURE GROWN DIAMONDS, INC. and
IIA TECHNOLOGIES PTE. LTD. d/b/a
IIA TECHNOLOGIES,

                Defendants.

Case No. 1:20-cv-00189 (JSR)

**DEFENDANTS' AMENDED DEFENSES**
**AND COUNTERCLAIMS**

        Pursuant to Federal Rule of Civil Procedure 15(a)(1)(B) and the Court's email directive

of June 17, 2020, Defendants Pure Grown Diamonds, Inc. ("PGD") and IIa Technologies Pte.

Ltd. ("2AT") (collectively, "Defendants") assert the following amended defenses, and PGD

asserts the following amended counterclaims, against Plaintiffs Carnegie Institution of

Washington ("Carnegie") and M7D Corporation ("M7D") (collectively, "Plaintiffs").

### AMENDED AFFIRMATIVE DEFENSES

        PGD and 2AT both assert the following amended affirmative defenses. PGD and 2AT

both reserve the right to modify its defenses and/or to raise additional defenses as discovery

proceeds.

### FIRST AFFIRMATIVE DEFENSE
#### (Non-Infringement of the Claims)

        1.      Neither PGD nor 2AT has infringed any enforceable, patent-eligible, and valid

claim of any of the patents Plaintiffs have asserted against PGD and 2AT directly, indirectly,

contributorily, or by inducement, either literally or under the doctrine of equivalents.

        2.      For example, neither PGD nor 2AT directly infringes (either literally or under the

doctrine of equivalents) the claims identified in the Complaint or in Plaintiffs' Local Patent

Rule 6 disclosures. Neither PGD nor 2AT manufactures diamonds in the United States. 2AT does not sell, offer for sale, use, or import diamonds in the United States. Neither PGD nor 2AT offers to sell, sells, uses, or imports into the United States diamonds made by the claimed processes. Neither PGD nor 2AT infringes the claims of the asserted patents under 35 U.S.C. § 271(g).

3.      In addition, neither PGD nor 2AT contributes to or induces the infringement of any claims identified in the Complaint. For example, neither PGD nor 2AT has induced, nor do they induce, infringement of any claims identified in the Complaint. Nor does either PGD or 2AT possess a specific intent to encourage others to infringe any claims identified in the Complaint. Neither PGD nor 2AT has been willfully blind to any risk of infringing either patent identified in the Complaint.

## SECOND AFFIRMATIVE DEFENSE
### (Invalidity of the Claims)

4.      The claims of the patents Plaintiffs have asserted against 2AT and PGD are invalid for failure to comply with the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without limitation each requirement in 35 U.S.C. §§ 101, 102, 103, 112, and 132.

## THIRD AFFIRMATIVE DEFENSE
### (No Willfulness)

5.      Neither PGD nor 2AT has intentionally, willfully, or deliberately infringed, either literally or under the doctrine of equivalents, any claim of the patents Plaintiffs have asserted against 2AT and PGD.

## FOURTH AFFIRMATIVE DEFENSE
### (Unavailability of Pre-Suit Damages)

6.      On information and belief, Plaintiffs have not complied with the requirements of 35 U.S.C. § 287(b)(2) by providing actual notice to either PGD or 2AT prior to filing the

Complaint, and are therefore precluded in whole or in part from seeking any recovery for alleged damages for the purported infringement of the patents identified in the Complaint prior to serving the Complaint in this action.

7.    Both PGD and 2AT lacked specific intent for others to infringe and a reckless disregard for infringement of the asserted patents prior to being served the Complaint (as they still do). Accordingly, Plaintiffs are not entitled to recover any damages for either contributory or induced infringement prior to the Complaint.

### FIFTH AFFIRMATIVE DEFENSE
### (Inequitable Conduct)

8.    The '189 Reissue Patent is unenforceable because it was acquired through inequitable conduct or, in the alternative, because the '189 Patent is a reissue of a patent that was procured by inequitable conduct

### The '189 Reissue Patent Was Acquired Through Inequitable Conduct

9.    On June 3, 2002, Robert H. Frushour and Wei Li filed U.S. Patent Application No. 10/161,266 ("the '266 Application"), which listed Frushour and Li as joint inventors. The '266 Application was accompanied by a Combined Declaration and Power of Attorney. That Declaration included the signed oaths of inventorship of both Frushour and Li. It states as follows: "I believe I am . . . an original, first and joint inventor . . . of the subject matter which is claimed and for which a patent is sought on the invention entitled: METHOD OF MAKING ENHANCED CVD DIAMOND." The signed oaths of inventorship further state "I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true." On May 22, 2002, Frushour and Li assigned their rights in the '266 Application to Phoenix Crystal Corporation and the Application eventually issued as the '610 patent on November 2, 2004.

10.    The '610 patent relates to high-pressure/high-temperature processes for single crystal CVD diamond. Dr. Frushour is listed as an inventor on at least 20 United States patents related to high-pressure/high-temperature diamond technology.

11.    On July 13, 2004, Russell Hemley, Ho-kwang Mao, and Chih-Shiue Yan filed U.S. Patent Application No. 10,889,171 ("the '171 Application"), which listed Hemley, Mao, and Yan as joint inventors. Hemley, Mao, and Yan assigned the '171 Application to Carnegie Institution of Washington ("Carnegie"), effective July 12, 2004.

12.    Along with the '171 Application, Hemley, Mao, and Yan included a request for an interference proceeding with the '266 Application, accompanied by a Declaration signed by Hemley, Mao, and Yan on July 12, 2004. The interference request and Declaration were made part of the file for the '266 Application on August 30, 2004. Hemley, Mao, and Yan submitted the declaration to the Patent Office without ever speaking with Frushour.

13.    The claims of the '171 Application were drafted to be identical to the claims of the '266 Application and the '610 Patent. If the '171 Application and declaration are to be believed, neither Frushour nor Li were inventors of the subject matter claimed in the '610 and '189 Patents; only Hemley, Mao, and Yan were.

14.    On June 11, 2020, Frushour appeared for depositions and testified under oath as to his contributions to the subject matter described and claimed in the '610 Patent. At the June 11, 2020 deposition, Frushour corroborated his testimony with the '266 Application that led to the '610 Patent, the Combined Declaration of Frushour and Li, and the contemporaneous lab notebooks of Li, which Frushour had maintained since they were created at Phoenix Crystal Corporation.

15.    At the June 11, 2020 deposition, Dr. Frushour reviewed the Declaration of Hemley, Mao, and Yan dated July 12, 2004, and disagreed with its content. Again, this Declaration was submitted by Hemley, Mao, and Yan without ever speaking to Frushour, a named inventor on the '266 Application and the '610 Patent.

16.    The Declaration of Hemley, Mao, and Yan dated July 12, 2004, contains false statements. Contrary to the Declaration, Hemley, Mao, and Yan did not convey the claimed annealing steps to Frushour or Li. Li's contemporaneously maintained notebook does not indicate that Hemley, Mao, or Yan provided any annealing conditions to use. Instead, Frushour and Li already knew what process conditions to use when anneal CVD diamonds because (i) they had previously induced color change in natural diamonds using the exact same annealing conditions, (ii) they thought those same annealing conditions would also work to induce color change in CVD diamond, and (iii) that process did, in fact, successfully induce the same color change in CVD diamonds.

17.    On May 6, 2004, Paul Kokulis, the prosecuting attorney for the '171 Application, wrote to James Singer, the prosecuting attorney for the '266 Application. Kokulis expressed the view his client, Carnegie Institution of Washington, was the rightful inventor of the claims in the '266 Application. On June 17, 2004, Singer responded, requesting documents in support of Carnegie's claim to inventorship. Singer stated that he had no reason to believe the inventorship was incorrect and would continue to believe the inventorship was correct until Carnegie could provide evidence otherwise. On June 25, 2004, Kokulis responded but did not provide any such evidence. On July 13, 2004, Kokulis filed the '171 Application along with the Declaration dated July 12, 2004, attempting to provoke an interference. On November 22, 2006, the U.S. Patent

Office rejected the Declaration and claims of the '171 Application, and Carnegie allowed

the '171 Application to go abandoned on August 15, 2007.

18.     On October 24, 2003, Phoenix Crystal Corporation assigned the '266 Application

to GE Superabrasives, Inc. (effective October 1, 2003).

19.     On December 31, 2003, GE Superabrasives, Inc. signed an agreement assigning

its rights in the '266 Application to Diamond Innovations, Inc.

20.     On November 2, 2004, the '266 Application issued as the '610 Patent, owned at

the time by Diamond Innovations, Inc. and listing Frushour and Li as the sole inventors.

21.     On September 4, 2008, Diamond Innovations, Inc. signed an agreement (effective

June 30, 2008) transferring its interest in the '610 Patent to Carnegie Institution of Washington,

subject to a non-exclusive license. This is the same Carnegie that tried to provoke an interference

proceeding with the Application that led to the '610 Patent, based on a false Declaration.

22.     On January 30, 2009, Carnegie Institution of Washington filed U.S. Patent

Application No. 12/362,529 ("the '529 Application"), seeking reissue of the '610 Patent. In

the '529 Application, Carnegie, through the Declaration of Gary Kowalczyk, falsely declared

that the '610 Patent contained "[a]t least one error"—namely, that "Robert H. Frushour is

incorrectly named on the 6,811,610 patent as an inventor and Russell J, Hemley, Ho-kwang Mao

and Chih-shiue Yan are incorrectly not named as inventors." In the Declaration, Kowalczyk and

Carnegie, as well as each of Hemley, Mao, and Yan, did not inform the Patent Office of the

previous failed attempt to challenge the inventorship of the '610 Patent, omitted evidence that

Diamond Innovations, Inc. believed Li and Frushour to be the correct inventors, and failed to

explain that Carnegie, Kowalczyk, Hemley, Mao, and Yan had never contacted Frushour to

discern whether he contributed to the claimed invention. Li could not have provided any credible

information that Frushour was not an inventor since it would directly contradict Li's own

Declaration under oath to the Patent Office in the '266 Application on May 22, 2002. At a

minimum, Kowalczyk had an obligation to contact Frushour before declaring to the Patent Office

he believed Frushour was not an inventor. Knowing that Frushour was a named inventor of

the '610 Patent, for Kowalczyk to state that "Frushour is incorrectly named on the 6,811,610 as

an inventor" was a knowingly false statement, or at best a willfully blind statement, intended to

deceive the Patent Office and to deprive them of material knowledge that Kowalczyk knew or

should have known undermined his claim.

23.     Had the Patent Office known any of these material facts, it would have required

further investigation into Carnegie's and Kowalczyk's claim of erroneous inventorship, and

the '189 Patent would not have issued listing Li, Hemley, Mao, and Yan as inventors.

24.     There was no mistake in the identification of Frushour and Li as inventors of

the '610 Patent. Despite asserting a mistake in inventorship in the '529 Application, Carnegie

and Kowalczyk did not include a Declaration in the reissue application from Mao, Hemley, Yan,

or any of the named inventors of the '610 Patent. Moreover, no one contacted Frushour in

connection with the reissue application to inquire whether there was a mistake in inventorship in

the '610 Patent. The '529 Application later reissued as the '189 Reissue Patent.

25.     The '189 Reissue Patent recites identical specification, figures and claims as

the '610 Patent.

26.     In contrast to the '610 Patent, which names Frushour and Li as the inventors of

the claimed subject matter, the '529 Application improperly added Carnegie scientists Russell J.

Hemley, Ho-Kwang Mao, and Chih-shiue Yan as the inventors of the claimed subject matter.

These are the same Hemley, Mao, and Yan that submitted a false Declaration in the '171

Application, an Application that the Patent Office rejected and Carnegie abandoned after failing to provoke an inventorship challenge in the Patent Office.

27.     In contrast to the '610 Patent, which named Frushour and Li as the inventors of the claimed subject matter, the '529 Application improperly removed Frushour as an inventor of the claimed subject matter. Again, no one contacted Frushour about the reissue application to inquire whether there was a mistake in inventorship in the '610 Patent, much less whether he should be removed as an inventor. Carnegie and Kowalczyk therefore lacked a sufficient basis to allege Frushour was incorrectly named as an inventor.

28.     Hemley, Mao, Yan, and Li, who are now named as co-inventors of the '189 Reissue Patent, as well as Carnegie and Kowalczyk, as the applicant for the '189 Patent, owed a duty of candor to the Patent Office. Under 37 C.F.R. § 1.56, they had a duty to disclose information material to the patentability of the '189 Patent, including inventorship conflicts.

29.     But Hemley, Mao, Yan, Carnegie, and Kowalczyk committed inequitable conduct by submitting a false declaration to the Patent Office during the prosecution of the '171 Application. Neither that Declaration nor the failed attempt to provoke an interference was brought to the attention of the Patent Office in the '529 Application leading to the '189 Reissue Patent.

30.     Upon information and belief, Carnegie and Kowalczyk specifically intended to deceive the Patent Office to falsely obtain recognition in the scientific community for its scientists, Hemley, Mao, and Yan, as the inventors of the claimed subject matter, and to secure the '189 Reissue Patent for Carnegie. Hemley, Mao, Yan, Carnegie, and Kowalczyk knew that they did not convey the claimed annealing steps to Frushour or Li, but still chose to submit a false declaration to that effect in 2004 to the Patent Office. With an intent to deceive the Patent

Office, they falsely alleged a mistake in inventorship to the Patent Office nearly five years after they abandoned their original inventorship challenge to obtain the '189 Reissue Patent and add themselves as named inventors when they were not.

31.     Information pertinent to the falsity of that declaration of inventorship was not provided to the Patent Office during the reissue application process for the '610 Patent by any of Carnegie, Kowalczyk, Hemley, Mao, Yan, or Li. Had that Patent Office had this information, it would not have reissued the '610 Patent as the '189 Reissue Patent naming Hemley, Mao, and Yan as co-inventors.

32.     Moreover, while filing the '529 Application that led to the '189 Reissue Patent, Hemley, Mao, Li, Yan, Kowalczyk, and Carnegie falsely represented to the Patent Office that another mistake had been made regarding inventorship—that Frushour was not an inventor of the subject matter claimed in the '189 Patent. Along with the reissue application for the '189 Patent, Carnegie's representative, Gary Kowalczyk, Director of Administration and Finance at Carnegie, signed a reissue application declaration. Under oath, Carnegie, through Kowalczyk, claimed that a mistake had been made regarding the inventorship of the '610 Patent, and that Frushour was not an inventor of the subject matter claimed in the '189 Patent.

33.     That was a false oath. Frushour was a co-inventor of the subject matter claimed in the '189 Patent. Frushour contributed to the conception of the subject matter claimed in the '189 Patent. Frushour's co-inventorship is corroborated by the '266 Application, evidence produced by Carnegie in May 2020, and evidence produced by Frushour in response to subpoena in June 2020, as well as his deposition testimony from June 11, 2020.

34.     But for the false representations to the Patent Office in the Kowalczyk Declaration that Frushour was not an inventor of the subject matter claimed in the '610 Patent, the Patent Office would not have reissued it as the '189 Patent.

35.     Hemley, Mao, Yan, Carnegie, and Kowalczyk committed inequitable conduct by failing to inform the Patent Office that they had not investigated the ownership question with all of the original inventors. This was material information. The Patent Office had no reason to believe that the '189 Patent failed to name the correct inventors because Carnegie did not inform the Patent Office of its failure to investigate with Frushour his status as an inventor.  Had Carnegie informed the Patent Office that it did not have full information, the Patent Office would have requested additional information regarding the alleged mistake and Frushour's contribution to the claimed subject matter, and refused to reissue the '189 Patent to Carnegie naming Hemley, Mao, Yan, and Li as the inventors.

36.     Moreover, Hemley, Mao, Yan, Carnegie, and Kowalczyk committed inequitable conduct by failing to inform the Patent Office that the prior owner of the '610 patent disputed their claim that Hemley, Mao, Yan had contributed to the conception of the claimed subject matter. Carnegie's attorney had been informed by the attorney prosecuting the '610 Patent that no mistake had been made during the prosecution of the '610 Patent. This was material information that they withheld from the Patent Office.  Had Carnegie informed the Patent Office that the prior owner disputed the existence of any alleged mistake in inventorship, the Patent Office would have required additional information, and refused to reissue the '189 Patent to Carnegie naming only Hemley, Mao, Yan, and Li as co-inventors.

37.     Upon information and belief, Hemley, Mao, Li, Yan, Carnegie, and Kowalczyk had specific intent to deceive the Patent Office about Frushour's co-inventorship of the subject

matter claimed in the '189 Patent, to falsely obtain recognition in the scientific community for

Hemley, Mao, and Yan as the inventors of the claimed subject matter, and to secure the '189

Patent in the name of their employer and the applicant, Carnegie.

38.     Similarly, on information and belief, Li committed inequitable conduct with

respect to the '529 Application that reissued as the '189 Patent. Li signed a Combined

Declaration and Power of Attorney on May 22, 2002, that declared that Frushour was a co-

inventor of the subject matter claimed in the '189 Reissue Patent. Frushour contributed to the

conception of the subject matter claimed in the '189 Reissue Patent. Frushour's co-inventorship

is corroborated by the '266 Application and documentary and testimonial evidence produced by

Frushour in response to subpoena, including a Phoenix Crystal Corporation lab notebook,

contemporaneously maintained by Li.

39.     Upon information and belief, Li specifically intended to deceive the Patent Office

on inventorship in order to secure the '189 Reissue Patent for his former colleagues at Carnegie

(Hemley, Mao, and Yan) in exchange for them including Li among the list of co-inventors to be

recognized by the scientific community for the invention.

40.     As a named inventor of the '266 Application that issued as the '610 Patent, and as

a named inventor of the '529 Application that reissued as the '189 Reissue Patent, Li owed a

duty of candor to the Patent Office. Under 37 C.F.R. § 1.56, Li had a duty to disclose

information material to the patentability of the '610 Patent and the '189 Reissue Patent,

including inventorship conflicts.

41.     Despite owing a duty of candor to the Patent Office, Li knew but chose not to

disclose to the Patent Office that Frushour was a co-inventor of the subject matter claimed in

the '529 Application. Consistent with Li's Combined Declaration dated May 22, 2002, Frushour

is an inventor, and there was no mistake in naming Frushour as an inventor. But for Li's violation of his duty of candor, on information and belief, the Patent Office would not have reissued the '189 Reissue Patent to Carnegie.

### In The Alternative, The '189 Reissue Patent Is A Reissue Of A Patent Procured By Inequitable Conduct

42.     If the July 12, 2004 Declaration of Hemley, Mao, and Yan is to be believed, Li committed inequitable conduct with respect to the earlier '266 Application that issued as the '610 Patent.

43.     According to Hemley's, Mao's, and Yan's Declaration dated July 12, 2004 (if believed to be true), Li was formerly a colleague of theirs at Carnegie. He knew at the time he filed the '266 Application with Frushour (leading to the '610 Patent) that Hemley, Mao, and Yan were the inventors of the subject matter claimed in the '266 Application and that Hemley, Mao, and Yan had not worked or spoken with Frushour. But Li failed to disclose to the Patent Office that Hemley, Mao, and Yan were also inventors of the subject matter claimed in the '266 Application and that Frushour was not an inventor. Li, in fact, declared to the contrary in his Declaration dated May 22, 2002, affirming that only he and Frushour were the inventors.

44.     If the Declaration of Hemley, Mao, and Yan dated July 12, 2004, is to be believed, then upon information and belief, Li specifically intended to deceive the Patent Office in the submission of the Declaration dated May 22, 2002, filed in the '266 Application. According to Hemley's, Mao's, and Yan's declaration (if believed to be true), and despite owing a duty of candor to the Patent Office, Li knew but deliberately chose not to disclose to the Patent Office that Hemley, Mao, and Yan were co-inventors of the subject matter claimed in the '266 Application and that Frushour was not an inventor.

45.     Again, according to Hemley's, Mao's, and Yan's Declaration (if believed to be true), but for Li's violation of his duty of candor by failing to disclose to the Patent Office that Hemley, Mao, and Yan were co-inventors and that Frushour was not an inventor, the Patent Office would not have issued the '610 Patent to Frushour and Li.

46.     Similarly, Li committed inequitable conduct in connection with the '266 Application because, if Hemley's, Mao's, and Yan's Declaration is to be believed, Li could not have believed in good faith that Frushour was an inventor at the time of his inventor oath in the '266 Application.

47.     Li signed the same declaration as Frushour, in which both claimed to have been the inventors of the subject matter. Li did not dispute that Frushour was an inventor when he signed the declaration in May 2002. Nor did he ever inform Frushour of his belief that Frushour was not an inventor. Li did not communicate with Frushour about the facts of the invention after signing his declaration. There was no new factual information available to Li in January 2009, when the application for the '189 Reissue Patent was filed, that he did not have at the time of his May 2002 Declaration. Thus, to the extent that Hemley's, Mao's, and Yan's Declaration is believed to be true and Li believes Frushour was not an inventor, he necessarily had that belief at the time he signed his declaration in the '266 Application. Li therefore falsely stated under oath that Frushour was an inventor and he knowingly and intentionally sought to deceive the Patent Office through his false declaration.

48.     Li's inequitable conduct with respect to the '266 Application taints not just the '610 Patent, but also the '189 Reissue Patent, because inequitable conduct cannot be cured by reissue.

49.     Whichever way one looks at the situation, the '189 Reissue Patent is unenforceable due to inequitable conduct. Either Frushour is an inventor or he is not. If he is not an inventor, Li falsely stated that he was when he signed the original joint declaration.  Li cannot take back that declaration now on the basis that he originally acted in good faith. There is no "new" factual information supporting any claim that Frushour was not an inventor, and Li had an obligation to read and understand what he signed on the basis of the facts then known to him, which was that Frushour was an inventor. On the other hand, if Li acted in good faith when he signed the declaration (which is consistent with the documentary and testimonial evidence in this case), there is no factual or legal basis upon which he could later recant that declaration. If Frushour is an inventor, then Li, Hemley, Mao, Yan, Li, Carnegie, and Kowalczyk committed inequitable conduct by submitting a false declaration that a mistake as to inventorship had been made. There was no mistake. Frushour is an inventor.

50.     Either way, someone deliberately lied to the Patent Office, and that lie was material to patentability. Had the Patent Office been aware of the true facts, they either would not have issued the '610 Patent to Li and Frushour or not re-issued the '189 Reissue Patent to Li, Hemley, Mao, and Yan.

51.     The '189 Reissue patent is therefore unenforceable due to inequitable conduct.

52.     These specific examples of inequitable conduct described above are intended to be exemplary only, as further facts developed through discovery may provide additional examples.

### SIXTH AFFIRMATIVE DEFENSE
### (Invalidity Under § 251)

53.     On January 30, 2009, Carnegie filed the '529 Application under 35 U.S.C. § 251, seeking to change the inventorship of the '610 Patent by removing Frushour as an inventor and

adding the '171 Applicants: Hemley, Mao, and Yan. To correct inventorship under 35 U.S.C § 256 requires that "all parties"—including all inventors being added, removed, or maintained—agree and that inventorship is not contested.

54.     Having failed to trigger an interference proceeding more than four years prior, and opting not to change inventorship through a certificate of correction (which would have required Frushour and Li's consent), Carnegie unilaterally applied for a reissue without submitting any information by or on behalf of the inventors listed on the '610 Patent or the substitute inventors identified in the '529 Application.

55.     The same law firm that filed the '529 Application also filed the '171 Application and recorded the assignment from Diamond Innovations, Inc. to Carnegie Institution of Washington.

56.     On April 6, 2010, the Patent Office reissued the '610 Patent as the '189 Patent with the inventorship changed as requested.

57.     Under 35 U.S.C § 251, reissue of the '189 Patent was only proper if it corrected an error made without any deceptive intention.

58.     The declaration accompanying the '171 Application indicated that Li concealed the existence of the '266 Application from the '171 Applicants and suggested that Frushour did not contribute to the invention.

59.     Deliberate actions taken during prosecution, such as those taken by the applicants and their attorneys during prosecution of the '266 and '171 Applications, are not errors made without any deceptive intention under § 251.

60.     On information and belief, Frushour and Li purposefully did not name the '171 Applicants as co-inventors of the '266 Application and purposefully named themselves as the

sole inventors of the '266 Application. The '189 Patent therefore reissued contrary to § 251 and is invalid.

## SEVENTH AFFIRMATIVE DEFENSE
### (Lack of Standing)

61.     After the change in inventorship effected by the issuance of the '189 Patent, Hemley, Mao, and Yan were each made a joint owner of the '189 Patent. Because no documents are recorded with the USPTO reflecting that Hemley, Mao, or Yan assigned their rights in the '189 Patent to Carnegie, on information and belief, Plaintiffs lack standing to sue for infringement of the '189 Patent.

62.     Additionally, the '171 Application was published on February 3, 2005, as U.S. Patent Application Publication No. 2005/0025886. Paragraph [0002] of that document states that "This invention was made with U.S. government support under grant number EAR-0135626 from the National Science Foundation. The U.S. government has certain rights in the invention." The '189 Patent lacks any such statement. On information and belief, Carnegie failed to notify the federal government that it has rights in the '189 Patent within the time allotted under 35 U.S.C. § 202(c)(2), giving the federal government no notice or opportunity to exercise its rights in the '189 Patent.

63.     On information and belief, M7D Corporation has not established that it has standing to enforce either of the asserted patents. M7D Corporation has not alleged that it is an exclusive licensee or owner of either asserted patent, and it is well settled that a non-exclusive licensee of a patent has no standing to sue for infringement.

64.     On information and belief, Plaintiff M7D Corporation is, at best, a non-exclusive licensee of at least the '189 Patent. For example, Diamond Innovations, Inc. retained a non-exclusive license to the '610 Patent when it assigned title to the '610 Patent to Carnegie

Institution of Washington. On information and belief, nothing in the license between Diamond Innovations, Inc. and Carnegie Institution of Washington would preclude that license from surviving a reissue to amend inventorship.

65.     These specific examples are intended to be exemplary only, as further facts developed through discovery may provide additional examples of Plaintiffs' lack of standing.

### EIGHTH AFFIRMATIVE DEFENSE
### (License, Release, Patent Exhaustion)

66.     Plaintiffs' attempted enforcement of the asserted patents is barred, in whole or in part, by one or more of the doctrines of license, release, and patent exhaustion.

### NINTH AFFIRMATIVE DEFENSE
### (Enforceability—Laches, Estoppel, Acquiescence, and Waiver)

67.     Plaintiffs are barred in whole or in part by the doctrines of laches, estoppel, acquiescence, and/or waiver from enforcing the asserted patent against both PGD and 2AT.

### OTHER DEFENSES

68.     PGD's and 2AT's investigations of their defenses are continuing, and PGD and 2AT both expressly reserve their rights to allege and assert any additional affirmative defenses under Rule 8 of the Federal Rules of Civil Procedure, the patent laws of the United States, and any other defense, at law or in equity, that may now exist or in the future be available based upon discovery and further investigation in this case.  To the extent applicable, PGD and 2AT both also expressly incorporate by reference herein all defenses pled by the other defendants in other actions against Plaintiffs involving the asserted patents.

## AMENDED COUNTERCLAIMS

Defendant PGD asserts the following amended counterclaims against Plaintiffs Carnegie and M7D.

## THE PARTIES

1.      PGD is a Delaware corporation with a headquarters located at 45 West 45th Street, 5th Floor, New York City, New York 10036.

2.      Upon information and belief, Carnegie is a Washington, D.C. corporation with its headquarters and principal place of business at 1530 P St. N.W., Washington, D.C. 20005.

3.      Upon information and belief, M7D is a Delaware corporation with its headquarters and principal places of business at 6700 Virginia Manor Road, Beltsville, Maryland 20705.

## JURISDICTION AND VENUE

4.      PGD's counterclaims for declaratory judgment arise under the Federal Declaratory Judgment Act and the patent law of the United States, 28 U.S.C. §§ 2201 and 2202, and 35 U.S.C. § 100 *et seq*. This Court has subject matter jurisdiction over PGD's counterclaims under 28 U.S.C. §§ 1331, 1367, and 1338(a).

5.      On January 9, 2020, Plaintiffs filed their original Complaint (ECF No. 1) in the Southern District of New York. The Complaint alleged infringement of U.S. Patent No. 6,858,078 ("the '078 Patent") and U.S. Patent No. RE41,189 ("the '189 Patent"). PGD denies infringement of the patents-in-suit and asserts invalidity and unenforceability of the patents, among other defenses, as set forth above. As a consequence, there is an actual justiciable controversy between PGD and Plaintiffs regarding the validity, enforceability, and infringement of the claims of the Patents-in-Suit.

6.      This Court has personal jurisdiction over Plaintiffs at least by virtue of their consent to file this case in the Southern District of New York.

7.      To the extent venue in this Court is proper for the claims set forth in Plaintiffs' Complaint, venue is also proper for these counterclaims.

## FIRST COUNTERCLAIM
### (Declaratory Judgment of Invalidity)

8.      The allegations of Paragraphs 1-7 of the Counterclaims are incorporated by reference as if fully set forth herein.

9.      The claims of the patents Plaintiffs have asserted against PGD are invalid for failure to comply with the conditions for patentability specified in 35 U.S.C. § 101 *et seq.*, including without limitation each requirement in 35 U.S.C. §§ 101, 102, 103, 112, and 132.

10.     Accordingly, PGD is entitled to a declaratory judgment that the claims of the patents-in-suit are invalid.

## SECOND COUNTERCLAIM
### (Declaratory Judgment of Non-Infringement)

11.     The allegations of Paragraphs 1-10 of the Counterclaims are incorporated by reference as if fully set forth herein.

12.     For example, PGD does not directly infringe (either literally or under the doctrine of equivalents) the claims identified in the Complaint or in Plaintiffs' Local Patent Rule 6 disclosures. PGD does not manufacture diamonds at all, let alone in the United States. PGD does not offer to sell, sell, use, or import into the United States diamonds made by the claimed processes. PGD does not infringe the claims of the asserted patents under 35 U.S.C. § 271(g).

13.     In addition, PGD does not contribute to or induce the infringement of any claims identified in the Complaint. For example, PGD has not induced, nor does it induce, infringement of any claims identified in the Complaint. Nor does PGD possess a specific intent to encourage

others to infringe any claims identified in the Complaint. PGD has not been willfully blind to any

risk of infringing either patent identified in the Complaint.

14.     Accordingly, PGD is entitled to a declaratory judgment that it has not infringed

and is not infringing any claim of the patents-in-suit.

### THIRD COUNTERCLAIM
### (Inequitable Conduct)

15.     The allegations of Paragraphs 1-14 of the Counterclaims are incorporated by

reference as if fully set forth herein.

16.     The '189 Patent is unenforceable because it was acquired through inequitable

conduct or, in the alternative, because the '189 Patent is a reissue of a patent that was procured

by inequitable conduct.

### The '189 Reissue Patent Was Acquired Through Inequitable Conduct

17.     On June 3, 2002, Robert H. Frushour and Wei Li filed U.S. Patent Application

No. 10/161,266 ("the '266 Application"), which listed Frushour and Li as joint inventors. The

'266 Application was accompanied by a Combined Declaration and Power of Attorney. That

Declaration included the signed oaths of inventorship of both Frushour and Li. It states as

follows: "I believe I am . . . an original, first and joint inventor . . . of the subject matter which is

claimed and for which a patent is sought on the invention entitled: METHOD OF MAKING

ENHANCED CVD DIAMOND." The signed oaths of inventorship further state "I hereby

declare that all statements made herein of my own knowledge are true and that all statements

made on information and belief are believed to be true." On May 22, 2002, Frushour and Li

assigned their rights in the '266 Application to Phoenix Crystal Corporation and the Application

eventually issued as the '610 patent on November 2, 2004.

18.     The '610 patent relates to high-pressure/high-temperature processes for single crystal CVD diamond. Dr. Frushour is listed as an inventor on at least 20 United States patents related to high-pressure/high-temperature diamond technology.

19.     On July 13, 2004, Russell Hemley, Ho-kwang Mao, and Chih-Shiue Yan filed U.S. Patent Application No. 10,889,171 ("the '171 Application"), which listed Hemley, Mao, and Yan as joint inventors. Hemley, Mao, and Yan assigned the '171 Application to Carnegie Institution of Washington ("Carnegie"), effective July 12, 2004.

20.     Along with the '171 Application, Hemley, Mao, and Yan included a request for an interference proceeding with the '266 Application, accompanied by a Declaration signed by Hemley, Mao, and Yan on July 12, 2004. The interference request and Declaration were made part of the file for the '266 Application on August 30, 2004. Hemley, Mao, and Yan submitted the declaration to the Patent Office without ever speaking with Frushour.

21.     The claims of the '171 Application were drafted to be identical to the claims of the '266 Application and the '610 Patent. If the '171 Application and declaration are to be believed, neither Frushour nor Li were inventors of the subject matter claimed in the '610 and '189 Patents; only Hemley, Mao, and Yan were.

22.     On June 11, 2020, Frushour appeared for depositions and testified under oath as to his contributions to the subject matter described and claimed in the '610 Patent. At the June 11, 2020 deposition, Frushour corroborated his testimony with the '266 Application that led to the '610 Patent, the Combined Declaration of Frushour and Li, and the contemporaneous lab notebooks of Li, which Frushour had maintained since they were created at Phoenix Crystal Corporation.

23.     At the June 11, 2020 deposition, Dr. Frushour reviewed the Declaration of Hemley, Mao, and Yan dated July 12, 2004, and disagreed with its content. Again, this Declaration was submitted by Hemley, Mao, and Yan without ever speaking to Frushour, a named inventor on the '266 Application and the '610 Patent.

24.     The Declaration of Hemley, Mao, and Yan dated July 12, 2004, contains false statements. Contrary to the Declaration, Hemley, Mao, and Yan did not convey the claimed annealing steps to Frushour or Li. Li's contemporaneously maintained notebook does not indicate that Hemley, Mao, or Yan provided any annealing conditions to use. Instead, Frushour and Li already knew what process conditions to use when anneal CVD diamonds because (i) they had previously induced color change in natural diamonds using the exact same annealing conditions, (ii) they thought those same annealing conditions would also work to induce color change in CVD diamond, and (iii) that process did, in fact, successfully induce the same color change in CVD diamonds.

25.     On May 6, 2004, Paul Kokulis, the prosecuting attorney for the '171 Application, wrote to James Singer, the prosecuting attorney for the '266 Application. Kokulis expressed the view his client, Carnegie Institution of Washington, was the rightful inventor of the claims in the '266 Application. On June 17, 2004, Singer responded, requesting documents in support of Carnegie's claim to inventorship. Singer stated that he had no reason to believe the inventorship was incorrect and would continue to believe the inventorship was correct until Carnegie could provide evidence otherwise. On June 25, 2004, Kokulis responded but did not provide any such evidence. On July 13, 2004, Kokulis filed the '171 Application along with the Declaration dated July 12, 2004, attempting to provoke an interference. On November 22, 2006, the U.S. Patent

Office rejected the Declaration and claims of the '171 Application, and Carnegie allowed the '171 Application to go abandoned on August 15, 2007.

26.     On October 24, 2003, Phoenix Crystal Corporation assigned the '266 Application to GE Superabrasives, Inc. (effective October 1, 2003).

27.     On December 31, 2003, GE Superabrasives, Inc. signed an agreement assigning its rights in the '266 Application to Diamond Innovations, Inc.

28.     On November 2, 2004, the '266 Application issued as the '610 Patent, owned at the time by Diamond Innovations, Inc. and listing Frushour and Li as the sole inventors.

29.     On September 4, 2008, Diamond Innovations, Inc. signed an agreement (effective June 30, 2008) transferring its interest in the '610 Patent to Carnegie Institution of Washington, subject to a non-exclusive license. This is the same Carnegie that tried to provoke an interference proceeding with the Application that led to the '610 Patent, based on a false Declaration.

30.     On January 30, 2009, Carnegie Institution of Washington filed U.S. Patent Application No. 12/362,529 ("the '529 Application"), seeking reissue of the '610 Patent. In the '529 Application, Carnegie, through the Declaration of Gary Kowalczyk, falsely declared that the '610 Patent contained "[a]t least one error"—namely, that "Robert H. Frushour is incorrectly named on the 6,811,610 patent as an inventor and Russell J, Hemley, Ho-kwang Mao and Chih-shiue Yan are incorrectly not named as inventors." In the Declaration, Kowalczyk and Carnegie, as well as each of Hemley, Mao, and Yan, did not inform the Patent Office of the previous failed attempt to challenge the inventorship of the '610 Patent, omitted evidence that Diamond Innovations, Inc. believed Li and Frushour to be the correct inventors, and failed to explain that Carnegie, Kowalczyk, Hemley, Mao, and Yan had never contacted Frushour to discern whether he contributed to the claimed invention. Li could not have provided any credible information that

Frushour was not an inventor since it would directly contradict Li's own Declaration under oath to the Patent Office in the '266 Application on May 22, 2002. At a minimum, Kowalczyk had an obligation to contact Frushour before declaring to the Patent Office he believed Frushour was not an inventor. Knowing that Frushour was a named inventor of the '610 Patent, for Kowalczyk to state that "Frushour is incorrectly named on the 6,811,610 as an inventor" was a knowingly false statement, or at best a willfully blind statement, intended to deceive the Patent Office and to deprive them of material knowledge that Kowalczyk knew or should have known undermined his claim.

31.     Had the Patent Office known any of these material facts, it would have required further investigation into Carnegie's and Kowalczyk's claim of erroneous inventorship, and the '189 Patent would not have issued listing Li, Hemley, Mao, and Yan as inventors.

32.     There was no mistake in the identification of Frushour and Li as inventors of the '610 Patent. Despite asserting a mistake in inventorship in the '529 Application, Carnegie and Kowalczyk did not include a Declaration in the reissue application from Mao, Hemley, Yan, or any of the named inventors of the '610 Patent. Moreover, no one contacted Frushour in connection with the reissue application to inquire whether there was a mistake in inventorship in the '610 Patent. The '529 Application later reissued as the '189 Reissue Patent.

33.     The '189 Reissue Patent recites identical specification, figures and claims as the '610 Patent.

34.     In contrast to the '610 Patent, which names Frushour and Li as the inventors of the claimed subject matter, the '529 Application improperly added Carnegie scientists Russell J. Hemley, Ho-Kwang Mao, and Chih-shiue Yan as the inventors of the claimed subject matter. These are the same Hemley, Mao, and Yan that submitted a false Declaration in the '171

Application, an Application that the Patent Office rejected and Carnegie abandoned after failing to provoke an inventorship challenge in the Patent Office.

35.     In contrast to the '610 Patent, which named Frushour and Li as the inventors of the claimed subject matter, the '529 Application improperly removed Frushour as an inventor of the claimed subject matter. Again, no one contacted Frushour about the reissue application to inquire whether there was a mistake in inventorship in the '610 Patent, much less whether he should be removed as an inventor. Carnegie and Kowalczyk therefore lacked a sufficient basis to allege Frushour was incorrectly named as an inventor.

36.     Hemley, Mao, Yan, and Li, who are now named as co-inventors of the '189 Reissue Patent, as well as Carnegie and Kowalczyk, as the applicant for the '189 Patent, owed a duty of candor to the Patent Office. Under 37 C.F.R. § 1.56, they had a duty to disclose information material to the patentability of the '189 Patent, including inventorship conflicts.

37.     But Hemley, Mao, Yan, Carnegie, and Kowalczyk committed inequitable conduct by submitting a false declaration to the Patent Office during the prosecution of the '171 Application. Neither that Declaration nor the failed attempt to provoke an interference was brought to the attention of the Patent Office in the '529 Application leading to the '189 Reissue Patent.

38.     Upon information and belief, Carnegie and Kowalczyk specifically intended to deceive the Patent Office to falsely obtain recognition in the scientific community for its scientists, Hemley, Mao, and Yan, as the inventors of the claimed subject matter, and to secure the '189 Reissue Patent for Carnegie. Hemley, Mao, Yan, Carnegie, and Kowalczyk knew that they did not convey the claimed annealing steps to Frushour or Li, but still chose to submit a false declaration to that effect in 2004 to the Patent Office. With an intent to deceive the Patent

Office, they falsely alleged a mistake in inventorship to the Patent Office nearly five years after they abandoned their original inventorship challenge to obtain the '189 Reissue Patent and add themselves as named inventors when they were not.

39.     Information pertinent to the falsity of that declaration of inventorship was not provided to the Patent Office during the reissue application process for the '610 Patent by any of Carnegie, Kowalczyk, Hemley, Mao, Yan, or Li. Had that Patent Office had this information, it would not have reissued the '610 Patent as the '189 Reissue Patent naming Hemley, Mao, and Yan as co-inventors.

40.     Moreover, while filing the '529 Application that led to the '189 Reissue Patent, Hemley, Mao, Li, Yan, Kowalczyk, and Carnegie falsely represented to the Patent Office that another mistake had been made regarding inventorship—that Frushour was not an inventor of the subject matter claimed in the '189 Patent. Along with the reissue application for the '189 Patent, Carnegie's representative, Gary Kowalczyk, Director of Administration and Finance at Carnegie, signed a reissue application declaration. Under oath, Carnegie, through Kowalczyk, claimed that a mistake had been made regarding the inventorship of the '610 Patent, and that Frushour was not an inventor of the subject matter claimed in the '189 Patent.

41.     That was a false oath. Frushour was a co-inventor of the subject matter claimed in the '189 Patent. Frushour contributed to the conception of the subject matter claimed in the '189 Patent. Frushour's co-inventorship is corroborated by the '266 Application, evidence produced by Carnegie in May 2020, and evidence produced by Frushour in response to subpoena in June 2020, as well as his deposition testimony from June 11, 2020.

42.     But for the false representations to the Patent Office in the Kowalczyk Declaration that Frushour was not an inventor of the subject matter claimed in the '610 Patent, the Patent Office would not have reissued it as the '189 Patent.

43.     Hemley, Mao, Yan, Carnegie, and Kowalczyk committed inequitable conduct by failing to inform the Patent Office that they had not investigated the ownership question with all of the original inventors. This was material information. The Patent Office had no reason to believe that the '189 Patent failed to name the correct inventors because Carnegie did not inform the Patent Office of its failure to investigate with Frushour his status as an inventor.  Had Carnegie informed the Patent Office that it did not have full information, the Patent Office would have requested additional information regarding the alleged mistake and Frushour's contribution to the claimed subject matter, and refused to reissue the '189 Patent to Carnegie naming Hemley, Mao, Yan, and Li as the inventors.

44.     Moreover, Hemley, Mao, Yan, Carnegie, and Kowalczyk committed inequitable conduct by failing to inform the Patent Office that the prior owner of the '610 patent disputed their claim that Hemley, Mao, Yan had contributed to the conception of the claimed subject matter. Carnegie's attorney had been informed by the attorney prosecuting the '610 Patent that no mistake had been made during the prosecution of the '610 Patent. This was material information that they withheld from the Patent Office.  Had Carnegie informed the Patent Office that the prior owner disputed the existence of any alleged mistake in inventorship, the Patent Office would have required additional information, and refused to reissue the '189 Patent to Carnegie naming only Hemley, Mao, Yan, and Li as co-inventors.

45.     Upon information and belief, Hemley, Mao, Li, Yan, Carnegie, and Kowalczyk had specific intent to deceive the Patent Office about Frushour's co-inventorship of the subject

matter claimed in the '189 Patent, to falsely obtain recognition in the scientific community for

Hemley, Mao, and Yan as the inventors of the claimed subject matter, and to secure the '189

Patent in the name of their employer and the applicant, Carnegie.

46.     Similarly, on information and belief, Li committed inequitable conduct with

respect to the '529 Application that reissued as the '189 Patent. Li signed a Combined

Declaration and Power of Attorney on May 22, 2002, that declared that Frushour was a co-

inventor of the subject matter claimed in the '189 Reissue Patent. Frushour contributed to the

conception of the subject matter claimed in the '189 Reissue Patent. Frushour's co-inventorship

is corroborated by the '266 Application and documentary and testimonial evidence produced by

Frushour in response to subpoena, including a Phoenix Crystal Corporation lab notebook,

contemporaneously maintained by Li.

47.     Upon information and belief, Li specifically intended to deceive the Patent Office

on inventorship in order to secure the '189 Reissue Patent for his former colleagues at Carnegie

(Hemley, Mao, and Yan) in exchange for them including Li among the list of co-inventors to be

recognized by the scientific community for the invention.

48.     As a named inventor of the '266 Application that issued as the '610 Patent, and as

a named inventor of the '529 Application that reissued as the '189 Reissue Patent, Li owed a

duty of candor to the Patent Office. Under 37 C.F.R. § 1.56, Li had a duty to disclose

information material to the patentability of the '610 Patent and the '189 Reissue Patent,

including inventorship conflicts.

49.     Despite owing a duty of candor to the Patent Office, Li knew but chose not to

disclose to the Patent Office that Frushour was a co-inventor of the subject matter claimed in the

'529 Application. Consistent with Li's Combined Declaration dated May 22, 2002, Frushour is

an inventor, and there was no mistake in naming Frushour as an inventor. But for Li's violation of his duty of candor, on information and belief, the Patent Office would not have reissued the '189 Reissue Patent to Carnegie.

### In The Alternative, The '189 Reissue Patent Is A Reissue Of A Patent Procured By Inequitable Conduct

50.     If the July 12, 2004 Declaration of Hemley, Mao, and Yan is to be believed, Li committed inequitable conduct with respect to the earlier '266 Application that issued as the '610 Patent.

51.     According to Hemley's, Mao's, and Yan's Declaration dated July 12, 2004 (if believed to be true), Li was formerly a colleague of theirs at Carnegie. He knew at the time he filed the '266 Application with Frushour (leading to the '610 Patent) that Hemley, Mao, and Yan were the inventors of the subject matter claimed in the '266 Application and that Hemley, Mao, and Yan had not worked or spoken with Frushour. But Li failed to disclose to the Patent Office that Hemley, Mao, and Yan were also inventors of the subject matter claimed in the '266 Application and that Frushour was not an inventor. Li, in fact, declared to the contrary in his Declaration dated May 22, 2002, affirming that only he and Frushour were the inventors.

52.     If the Declaration of Hemley, Mao, and Yan dated July 12, 2004, is to be believed, then upon information and belief, Li specifically intended to deceive the Patent Office in the submission of the Declaration dated May 22, 2002, filed in the '266 Application. According to Hemley's, Mao's, and Yan's declaration (if believed to be true), and despite owing a duty of candor to the Patent Office, Li knew but deliberately chose not to disclose to the Patent Office that Hemley, Mao, and Yan were co-inventors of the subject matter claimed in the '266 Application and that Frushour was not an inventor.

53.     Again, according to Hemley's, Mao's, and Yan's Declaration (if believed to be true), but for Li's violation of his duty of candor by failing to disclose to the Patent Office that Hemley, Mao, and Yan were co-inventors and that Frushour was not an inventor, the Patent Office would not have issued the '610 Patent to Frushour and Li.

54.     Similarly, Li committed inequitable conduct in connection with the '266 Application because, if Hemley's, Mao's, and Yan's Declaration is to be believed, Li could not have believed in good faith that Frushour was an inventor at the time of his inventor oath in the '266 Application.

55.     Li signed the same declaration as Frushour, in which both claimed to have been the inventors of the subject matter. Li did not dispute that Frushour was an inventor when he signed the declaration in May 2002. Nor did he ever inform Frushour of his belief that Frushour was not an inventor. Li did not communicate with Frushour about the facts of the invention after signing his declaration. There was no new factual information available to Li in January 2009, when the application for the '189 Reissue Patent was filed, that he did not have at the time of his May 2002 Declaration. Thus, to the extent that Hemley's, Mao's, and Yan's Declaration is believed to be true and Li believes Frushour was not an inventor, he necessarily had that belief at the time he signed his declaration in the '266 Application. Li therefore falsely stated under oath that Frushour was an inventor and he knowingly and intentionally sought to deceive the Patent Office through his false declaration.

56.     Li's inequitable conduct with respect to the '266 Application taints not just the '610 Patent, but also the '189 Reissue Patent, because inequitable conduct cannot be cured by reissue.

57.     Whichever way one looks at the situation, the '189 Reissue Patent is unenforceable due to inequitable conduct. Either Frushour is an inventor or he is not. If he is not an inventor, Li falsely stated that he was when he signed the original joint declaration.  Li cannot take back that declaration now on the basis that he originally acted in good faith. There is no "new" factual information supporting any claim that Frushour was not an inventor, and Li had an obligation to read and understand what he signed on the basis of the facts then known to him, which was that Frushour was an inventor. On the other hand, if Li acted in good faith when he signed the declaration (which is consistent with the documentary and testimonial evidence in this case), there is no factual or legal basis upon which he could later recant that declaration. If Frushour is an inventor, then Li, Hemley, Mao, Yan, Li, Carnegie, and Kowalczyk committed inequitable conduct by submitting a false declaration that a mistake as to inventorship had been made. There was no mistake. Frushour is an inventor.

58.     Either way, someone deliberately lied to the Patent Office, and that lie was material to patentability. Had the Patent Office been aware of the true facts, they either would not have issued the '610 Patent to Li and Frushour or not re-issued the '189 Reissue Patent to Li, Hemley, Mao, and Yan.

59.     The '189 Reissue patent is therefore unenforceable due to inequitable conduct.

60.     Accordingly, PGD is entitled to a declaratory judgment that the '189 Patent is unenforceable due to inequitable conduct.

61.     These specific examples of inequitable conduct described above are intended to be exemplary only, as further facts developed through discovery may provide additional examples.

## EXCEPTIONAL CASE

62.     This case is an exceptional case under 35 U.S.C. § 285, and PGD is entitled to recover from Plaintiffs attorneys' fees and costs incurred in connection with this action.

## PRAYER FOR RELIEF

WHEREFORE, PGD prays for judgment:

a.   Dismissing Plaintiffs' Complaint with prejudice;

b.   Finding in favor of PGD on Plaintiffs' infringement claims (i.e., that PGD has not infringed and is not now infringing any valid claim of the asserted patents);

c.   Finding that all asserted claims of the asserted patents are invalid and/or unenforceable;

d.   Finding that this case is exceptional under 35 U.S.C. § 285 and awarding PGD its reasonable costs and expenses of litigation, including attorneys' fees and expert witness fees;

e.   Awarding such other and further relief as this Court may deem just and proper.


Dated: New York, New York
           June 19, 2020

Respectfully submitted,

s/ William P. Deni, Jr.
William P. Deni, Jr.
J. Brugh Lower
**GIBBONS P.C.**
One Pennsylvania Plaza, 37th Floor
New York, NY 10119-3701
Tel: (212) 613-2000
Fax: (212) 290-2018
wdeni@gibbonslaw.com
jlower@gibbonslaw.com

Anand K. Sharma (*pro hac vice*)
J. Preston Long (*pro hac vice*)
**FINNEGAN, HENDERSON, FARABOW,
   GARRETT & DUNNER, LLP**
901 New York Avenue, NW
Washington, DC 20001

Tel: (202) 408-4000
Fax: (202) 408-4400
anand.sharma@finnegan.com
j.preston.long@finnegan.com

*Attorneys for Defendants*
*Pure Grown Diamonds, Inc. and*
*IIA Technologies Pte. Ltd.*