# PERKINSCOIE

1155 Avenue of the Americas  
22nd Floor  
New York, NY 10036-2711

T +1.212.262.6900  
F +1.212.977.1649  
PerkinsCoie.com

August 14, 2020

Matthew J. Moffa  
MMoffa@perkinscoie.com  
D. +1.212.261.6857  
F. +1.212.399.8057

**VIA ECF**

The Honorable Jed S. Rakoff, United States District Judge  
United States District Court for the Southern District of New York  
500 Pearl Street  
New York, NY 10007

**Re:** *Carnegie Institution of Washington et al. v. Pure Grown Diamonds, Inc., et al.*, 1:20-cv-00189-JSR; *Carnegie Institution of Washington and M7D Corporation v. Fenix Diamonds LLC*, 1:20-cv-00200-JSR.

Your Honor:

Pursuant to the Court's August 12, 2020 order, Plaintiffs submit this reply letter brief to address Defendants' sealed exhibits provided in opposition to plaintiff's privilege redactions to documents CARN-FEN_00115436 / CARN-PGD_00115709 and CARN-FEN_00115466 / CARN-PGD_00115739 in the captioned matters.

As set forth in Plaintiffs' August 10 letter brief ("Pls.' Br."), Huron Capital Partners LLC and M7D (in conjunction with TM Capital Corp.) shared a common interest in the validity, enforceability and strength of M7D's intellectual property as part of a potential (and later actual) investment in M7D by Huron. In pursuing its investment, Huron sought advice from its counsel regarding that IP, and it shared the advice it received with M7D and TM in a confidential presentation. Because this advice was only shared in view of—and in relation to—the parties' common legal interest in the validity, enforceability, and strength of the IP assessed, it retains its privileged character.

This Court authorized Defendants' August 12 opposition brief ("Opp'n") to include two sealed exhibits containing Plaintiffs' confidential information. Those exhibits were a December 21, 2018 agreement between Huron and M7D (among others) (Opp'n Ex. 2, ECF No. 85-2[1]) and an unredacted copy of the February 1, 2018 agreement between TM Capital and M7D, which Plaintiffs had originally included with their August 10 brief but had redacted to include only portions relevant to this dispute (namely, the confidentiality provisions). (Opp'n Ex. 3, ECF No. 85-3). Although not mentioned on their Court call, Defendants included a third sealed exhibit: Plaintiffs' privilege log encompassing the documents at issue. (Opp'n Ex. 1, ECF No. 85-1).

---

[1] All ECF numbers refer to *Carnegie Institution of Washington v. Pure Grown Diamonds, Inc.*, 1:20-cv-00189-JSR.

Hon. Jed S. Rakoff
August 14, 2020
Page 2

Defendants misread and misapply their three sealed exhibits to present privilege challenges which are wrong on the facts, wrong on the law, and in some cases, entirely irrelevant.

The December 2018 agreement between Huron and M7D is irrelevant for one simple reason: it facially post-dates the presentations by over a month. While Defendants attempt to characterize the relationship between Huron and M7D based on that agreement (Opp'n 3), the agreement did not define the relationship between Huron and M7D when the draft presentations were shared.[2] The December 2018 agreement simply has no bearing on the privilege preserved in the parties' November 6, 2018 email communications, except to confirm that the parties' aligned legal interest in November 2018 continues to the present day.

Defendants are wrong that any common legal interest "would have begun at the time of the parties' December 2018 agreement." (Opp'n 3–4.) The *Regents* case makes clear that common-interest privilege protects communications between an IP holder and a party evaluating an interest in the IP, as was the case for Huron and M7D in November 2018. Defendants never argue that *Regents* is wrongly decided or misinterpreted by Plaintiffs, but instead suggest it would not apply because Second Circuit (and not Federal Circuit) privilege law governs this dispute. (Opp'n 2) The attempt to cast away *Regents* is misleading because, as Plaintiffs' brief shows, courts in the Second Circuit *have* recognized the same common interest discussed in *Regents*. Pls.' Br. 3 (citing *Bristol-Meyers Squibb Co. v. Rhone-Poulenc Rorer, Inc.*, No. 95 Civ. 8833 (RPP), 1998 WL 158961 (S.D.N.Y. Apr. 1, 1998)). Plaintiffs also cited authority from the District of Delaware, where M7D is incorporated and whose law the parties elected to govern their original confidentiality agreement. *Id.* (citing *TC Technology LLC v. Sprint Corp.*, No. 16-CV-153-RGA, 2018 WL 6584122, at *5 (D. Del. Dec. 13, 2018)). Nor, to be clear, would Delaware state law treat Plaintiffs' assertion differently. *See Rembrandt Techs., L.P. v. Harris Corp.*, No. 07C-09-059-JRS, 2009 WL 402332, at *7 (Del. Super. Ct. Feb. 12, 2009).

> [F]ederal law controls the determination of privilege issues under Rule 501. There is no reason, however, to read this rule as referring solely to substantive federal common law as distinguished from such choice-of-law rules as may otherwise be applicable. Nor is there any reason to read the rule as inflexibly precluding a federal court from looking to the substantive law of jurisdictions that, by virtue of the circumstances in which the disputed communication was made, have the most direct and compelling interest in whether those communications are to be publicly disclosed.

---

[2] Nor does it exclusively do so today. Opp'n Ex. 2 is one of *dozens* of agreements produced to Defendants underlying Huron's investment in M7D. Plaintiffs have no intention of burdening the Court with the full legal architecture of the Huron-M7D relationship, but submit that Defendants' cherry-picked agreement, in isolation, cannot call into question the shared legal interests of Plaintiff M7D and Huron, its most significant investor, in M7D's intellectual property.

*Golden Trade, S.r.L. v. Lee Apparel Co.*, 143 F.R.D. 514, 521 (S.D.N.Y. 1992). Simply put, the December 2018 agreement has no bearing on whether the redacted material from the November 2018 presentations remain privileged, while Plaintiffs' brief and exhibits—and the universally acknowledged *Regents* decision—properly establish that it does.

Defendants' reliance on newly-introduced sections of the M7D-TM Capital agreement is similarly unfounded. Plaintiffs cited to the confidentiality portions of that agreement (in addition to those governing the relationship between M7D and Huron, *see* Pls.' Br. Exs. A & B, ECF Nos. 79-1, 79-2) merely to underscore that M7D, Huron, and TM Capital all expected the information they exchanged through the November 6 correspondence to remain confidential. Contrary to Defendants' assertion, the fact that these confidentiality provisions were written to emphasize one party's duty to the other does not mean the parties did not have a mutual expectation of confidentiality. It would make no sense to bind Huron to confidentiality regarding TM Capital's disclosures of M7D's confidential information, and then expect TM Capital to treat Huron's sensitive disclosures **regarding M7D's intellectual property** with any less confidentiality.

Nothing in the additional sections introduced by Defendants would undermine the parties' expectations of confidentiality. Defendants introduce other aspects of the M7D-TM Capital relationship to argue that TM was not the "functional equivalent" of M7D because the agreement indicates that TM Capital was an independent contractor. *Id.* at 4. Defendants are applying a legal theory that does not apply to the facts of this case. The so-called functional equivalent test involves a party sharing its privileged communications with an entity purportedly acting on its behalf. *E.g.* Opp'n Br. 4 (citing *Universal Standard Inc. v. Target Corp.*, 331 F.R.D. 80 (S.D.N.Y. 2019).) But here, the privilege holder (Huron) shared information from its attorneys with the owner of the IP (M7D) and a financial advisor managing the transaction on M7D's behalf (TM Capital), after already establishing their common legal interest in the validity, enforceability, and strength of M7D's IP. Huron sharing privileged communications with M7D is the quintessential common interest fact pattern. *See Schaeffler v. United States*, 806 F.3d 34, 40 (2d Cir. 2015). It would elevate form over substance if the common-interest doctrine were rendered inapposite because an agent for the recipient received the communications as part of the process.

But even if *arguendo* the agreement read as a whole failed to reflect an expectation of confidential treatment by all parties, the presentation itself unequivocally stated that "[a]ll information contained herein is provided on a confidential basis" and cannot be disclosed to others "without Huron Capital's prior written consent." *See, e.g.*, CARN-FEN_00115436 at 37. Nothing in Defendants' sealed exhibits supports the false notion that the privileged information in the presentation "was not intended to be and was not in fact kept confidential," Opp'n Br.2 (citation omitted)—and the presentation itself shows otherwise.

Defendants even stretch their reading of Plaintiffs' privilege log exhibit to support their incorrect positions. Defendants highlight that no attorneys are listed as "Author" or "Recipient" for the

Hon. Jed S. Rakoff
August 14, 2020
Page 4

redactions to the presentation. (Defendants, of course, cannot base their challenge on the redacted content, but this Court's *in camera* review can confirm the presence of attorney-communicated privileged material). Regardless this Court has recognized that a client can "repeat . . . advice to" a common-interest party, such as a co-defendant, "outside the presence of any attorney without causing the privilege to be waived." *Gucci Am., Inc. v. Gucci*, No. 07 Civ. 6820(RMB)(JCF), 2008 WL 5251989, at *1 (S.D.N.Y. Dec. 15, 2008); *see also Rembrandt*, 2009 WL 402332, at *8 (finding that a "common legal interest in the exploitation and enforcement of [a] patent" preserved privilege in documents "shared directly between community members, without involvement of counsel" as it related to that common interest).

Finally, in an email to Plaintiffs late on the afternoon of Thursday, August 13 (provided herewith as Ex. C) Defendants noted that Huron Capital itself had produced to them another version of the presentation at Bates number HUR_001440, redacted similarly to the November 6 draft presentations M7D had produced. Defendants insisted that Plaintiffs provide an unredacted copy of document HUR_001440 to the Court with their reply brief for *in camera* review. Defendants also insisted that Huron immediately provide them with a privilege log for the redactions to HUR_001440. Although counsel are doing so to avoid burdening the Court with yet another dispute, Plaintiffs disagree that this document bears in any way on the instant motion. No privilege in the November 6 draft presentations was waived by presentation of HUR_001440 at the November 7 "Lender Presentation." Huron, M7D, and TM Capital unquestionably shared a common legal interest in the validity, enforceability, and strength of M7D's IP as they confidentially brokered Huron's investment in M7D. Any further sharing of the privileged information in CARN-FEN_00115436 / CARN-PGD_00115709 and CARN-FEN_00115466 / CARN-PGD_00115739 on November 7 to that limited number of lenders,[3] each solicited to back Huron's investment, would not have affected privilege. Those disclosures were all NDAs and "on a confidential basis" requiring "Huron Capital's prior written consent" for disclosure, CARN-FEN_00115436 at 37, and would have been to parties equally interested in the validity, enforceability, and strength of M7D's IP. Plaintiffs said so in their opening brief, (Pls.' Br. 5 n.4), and nothing in Defendants' newly identified document changes that analysis.

Respectfully submitted,

/s/ Matthew J. Moffa

Matthew J. Moffa

cc:   Counsel of record (via ECF)

---

[3] Plaintiffs' counsel, as a courtesy, had identified to Defendants all participants in the November 7 presentation (and thus all potential recipients of the redacted material) prior to their request.