UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
CARNEGIE INSTITUTE OF WASHINGTON,  :
et al.,                            :
                                   :
     Plaintiffs,                   :
                                   :
          -v-                      :      20-cv-189 (JSR)
                                   :
PURE GROWN DIAMONDS, INC., et al., :
                                   :
     Defendants.                   :
                                   :
------------------------------------x
------------------------------------x
CARNEGIE INSTITUTE OF WASHINGTON,  :
et al.,                            :
                                   :
     Plaintiffs,                   :
                                   :
          -v-                      :      20-cv-200 (JSR)
                                   :
FENIX DIAMONDS, LLC,               :
                                   :
     Defendant.                    :
                                   :
------------------------------------x

MEMORANDUM ORDER

JED S. RAKOFF, U.S.D.J.

     Now before the Court is defendants' application to compel

production of an unredacted version of two PowerPoint

presentations,[1] which plaintiffs have produced in redacted form.

The Court authorized and received letter briefs on the issue.

_____

[1] CARN-FEN_00115436 / CARN-PGD_00115709 and CARN-FEN_00115466 /
CARN-PGD_00115739.

20cv189, ECF No. 79, 85, 87; 20cv200, ECF Nos. 83, 88, 90.[2]   The
Court rules as follows.

Background

The presentations were produced by Plaintiff M7D.   In 2018,
M7D was looking for investors, and it hired the financial
advisor TM Capital to assist it in that search.   Huron Capital
became interested in potentially investing in M7D, and it signed
a non-disclosure agreement ("NDA") with TM Capital, as agent for
M7D.   The NDA noted that "TM Capital, as agent of [M7D] is
furnishing to [Huron Capital] certain information [the
"Evaluation Material"] concerning [M7D] . . . which is strictly
confidential."   Huron Capital agreed, inter alia, not to
disclose to others the Evaluation Material.

Huron Capital hired the law firm Perkins Coie LLP (which
now represents M7D, though it did not at the time), and Perkins
Coie conducted due diligence regarding M7D's intellectual
property and trade secrets, as well as related intellectual
property.   Huron Capital remained interested in a potential
investment in M7D, and it sought additional investors to join in
that effort.   Huron Capital disclosed to M7D at least some of
the legal advice that Perkins Coie provided to Huron Capital.

---

[2] The briefs filed on the dockets of each of these two cases are
the same.   For conciseness, all subsequent citations are to the
20cv189 docket.

Then, M7D, Huron Capital, and TM Capital worked together to solicit additional potential investors.

A TM Capital employee sent a draft presentation to personnel from M7D and Huron Capital on November 6, 2018, at 8:48 am.[3]  The same employee sent "an updated version of Huron's presentation" to the same people at 7:22 pm that evening.[4]  Both drafts contained the three now-redacted slides.  The following day, a final version of the presentation (also containing the three at-issue slides) was shared with potential lenders.  The Court does not have before it enough information to determine who attended the November 7, 2018 presentation, but the parties agree that representatives of multiple potential investors or lenders were present.

Analysis

Defendants first argue that the redacted material is not privileged because it contains feedback from TM Capital, rather than legal advice or work product.

"The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance." In re Cty. of Erie, 473 F.3d 413, 418 (2d Cir. 2007).  "A party invoking the

---

[3] CARN-FEN_00115434.

[4] CARN-FEN_00115464.

3

attorney-client privilege must show (1) a communication between client and counsel that (2) was intended to be and was in fact kept confidential, and (3) was made for the purpose of obtaining or providing legal advice." Id. at 419.

As always when arguing that redacted material contains no legal advice, defendants argue from a position of partial ignorance, having not seen the redacted material. The Court, however, has reviewed the redacted slides in camera. Although it is not clear whether the language contained in the slides was drafted by a lawyer, the slides do appear to disclose legal conclusions reached by Perkins Coie attorneys.[5] The Court has no reason to doubt that that legal advice was privileged when Perkins Coie first shared it with its client, Huron Capital.

Defendants next argue that Huron Capital waived its privilege by disclosing the legal advice reflected in the presentation to M7D and its agent, TM Capital. Plaintiffs respond that privilege was not waived because of the common interest doctrine. The common interest doctrine is an exception to the rule that attorney-client privilege "is generally waived by voluntary disclosure of the [privileged] communication to another party." Schaeffler v. United States, 806 F.3d 34, 40

---

[5] That said, the redactions are plainly overbroad. For example, M7D redacted the names and pedigrees of Perkins Coie lawyers, which could not plausibly be construed to contain or reflect legal advice.

(2d Cir. 2015).  "[T]he privilege is not waived by disclosure of communications to a party that is engaged in a 'common legal enterprise' with the holder of the privilege."  Id.

Plaintiffs rely upon In re Regents of University of California, 101 F.3d 1386 (Fed. Cir. 1996), and its progeny.  In Regents, the University of California ("UC") had applied for patents and then executed with Eli Lilly & Co ("Lilly") "an exclusive option agreement for certain license rights" in patents issuing from those applications.  Id. at 1388.  Privileged communications were shared between UC and Lilly.  The Federal Circuit, applying Seventh Circuit privilege law and "[a]ccepting that the scope of the attorney-client privilege is narrowly drawn in the Seventh Circuit," id. at 1390, nevertheless held that privilege over those communications was preserved.  It reasoned that "the legal interest between Lilly and UC was substantially identical because of the potentially and ultimately exclusive nature of the Lilly-UC license agreement. Both parties had the same interest in obtaining strong and enforceable patents."  Id.

Here, plaintiffs argue that "Huron, as a potential investor, shared M7D's interest in ensuring that its intellectual property was strong, valid, and enforceable."  ECFR No. 79, at 4.  But this case is unlike Regents.  At the relevant time, Huron Capital contemplated investing in M7D, but it had

not done so.  M7D had a legal interest in the scope, validity, and enforceability of its patents, but Huron Capital only contemplated purchasing such an interest.  Put another way, Huron Capital was interested to know whether M7D had viable intellectual property, but if its attorneys had concluded otherwise, it could either have used that as leverage in negotiations with M7D or could have simply walked away.  By sharing privileged communications with a counterparty with which it shared no legal interest at that time, Huron Capital waived the attorney-client privilege.

Furthermore, even assuming arguendo that Huron Capital's cooperation with M7D and TM Capital to solicit investors demonstrates that the parties shared a common legal interest (and that TM Capital's participation as financial advisor did not waive the privilege, an issue the Court does not reach), Huron Capital also permitted its attorneys' conclusions to be shared with additional potential investors at the November 7, 2018 presentation.  These investors had no common legal interest with Huron Capital or M7D.  As a review of the slide deck reveals, TM Capital, M7D, and Huron Capital were still very much attempting to persuade these potential investors of the merits of an investment.  The attendees might one day have become co-investors alongside Huron Capital, but at the time that was nothing more than a speculative possibility.

The Court concludes that Huron Capital waived its privilege when it shared its attorneys' analysis with M7D and TM Capital, and in any event when it shared it with a group of potential investors on November 7, 2018.[6]

For these reasons, the Court determines that the three redacted slides must be produced in unredacted form and orders Plaintiff M7D to do so by 5:30 pm on Tuesday, August 25, 2020.

---

[6] The parties raise a choice of law dispute.  The Federal Circuit applies the law of the appropriate regional circuit on privilege issues.  See Regents, 101 F.3d at 1390 n.2.  However, Plaintiffs argue that federal choice-of-law principles permit the Court to look to the privilege law of a State, if the parties have contracted for the laws of a State to govern the dispute. Plaintiffs argue that the NDA between M7D and Huron Capital chose Delaware as the forum for disputes.  ECF No. 79-2, at 4.

However, the NDA between Huron Capital and M7D governed only "Evaluation Material," and, as defined in the NDA, Evaluation Material did not include information provided by Huron Capital to M7D.  Therefore, Delaware law does not apply.

Moreover, the Court's determination does not turn on the choice of applicable law because even applying Delaware law, Huron Capital waived the privilege.  Plaintiffs rely on TC Tech. LLC v. Sprint Corp., No. 16-CV-153-RGA, 2018 WL 6584122 (D. Del. Dec. 13, 2018), but its facts are quite different.  In TC Tech., two entities had been sued for alleged patent infringement.  The two entities created a third, jointly owned, entity to acquire a patent that could have offered leverage in defending the suit. They shared attorney-client communications, including "a handful" that pre-dated their creation of the joint entity.  Id. at *5.  In TC Tech., the two entities were already in the same boat, seeking out a specific patent for a specific purpose, not merely looking generally for a profitable investment. Furthermore, here, unlike in TC Tech., Huron Capital shared its attorneys' analysis not only with other potential investors but also with M7D itself.  Even under Delaware law, the common interest exception does not apply here.

SO ORDERED.

Dated:      New York, NY
            August 21, 2020

_____
JED S. RAKOFF, U.S.D.J.