**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

CARNEGIE INSTITUTION OF
WASHINGTON and M7D CORPORATION,

 Plaintiffs,

 v.                                                    Case No. 20-cv-189 (JSR)

PURE GROWN DIAMONDS, INC. and
IIA TECHNOLOGIES PTE. LTD.  d/b/a
IIA TECHNOLOGIES,

 Defendants.

---

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS**
**PURE GROWN DIAMONDS, INC. AND IIA TECHNOLOGIES**
**PTE. LTD.'S MOTION FOR SUMMARY JUDGMENT**

---

**GIBBONS P.C.**
William P. Deni, Jr.
J. Brugh Lower
One Pennsylvania Plaza, 37th Floor
New York, NY 10119-3701
Tel:  (212) 613-2000
Fax:  (212) 290-2018

**FINNEGAN, HENDERSON, FARABOW,**
**GARRETT & DUNNER, LLP**
Anand K. Sharma (*pro hac vice*)
Gerald F. Ivey (*pro hac vice*)
Cecilia Sanabria (*pro hac vice*)
J. Preston Long (*pro hac vice*)
Karthik Kumar (*pro hac vice*)
Regan Rundio (*pro hac vice*)
Amy Fulton (*pro hac vice*)
901 New York Avenue, NW
Washington, DC 20001
Tel: (202) 408-4000
Fax: (202) 408-4400

**TABLE OF CONTENTS**

I.      THE '078 PATENT IS NOT INFRINGED ........................................................................ 1

      A.      Summary judgment of no literal infringement ............................................. 1

      B.      Summary judgment of no infringement under DOE ..................................... 1

            1.      Plaintiffs are precluded from relying on DOE as a matter of law .............. 1

            2.      To the extent Plaintiffs can rely on DOE, no genuine issues
                  preclude summary judgment ....................................................................... 2

      C.      2AT's extraterritorial conduct precludes infringement of the '078 Patent ............. 5

II.     THE '078 PATENT IS INVALID ................................................................................... 7

      A.      No enablement or written description of controlling temperature gradients ......... 7

      B.      No written description of temperatures below 1000º C without oxygen ................ 9

III.    THE '189 PATENT CLAIMS ARE INVALID AS INDEFINITE ................................... 9

IV.     IF DEFINITE, THE '189 PATENT CLAIMS ARE NOT INFRINGED ........................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alcon Rsch. Ltd. v. Barr Labs., Inc.*,
   745 F.3d 1180 (Fed. Cir. 2014)..................................................................................7

*Amgen Inc. v. Hoechst Marion Roussel, Inc.*,
   314 F.3d 1313 (Fed. Cir. 2003)..................................................................................8

*Dow Chem. Co. v. Nova Chems. Corp.*,
   803 F.3d 620 (Fed. Cir. 2015)..................................................................................10

*Eli Lilly & Co. v. Am. Cyanamid Co.*,
   82 F.3d 1568 (Fed. Cir. 1996)....................................................................................6

*Engel Indus., Inc. v. Lockformer Co.*,
   946 F.2d 1528 (Fed. Cir. 1991)...................................................................................7

*Honeywell Int'l, Inc. v. Int'l Trade Comm'n*,
   341 F.3d 1332 (Fed. Cir. 2003)................................................................................10

*Intellectual Science & Tech., Inc. v. Sony Elecs., Inc.*,
   589 F.3d 1179 (Fed. Cir. 2009)...................................................................................4

*Marion Merrell Dow, Inc. v. Am. Cyanamid Co.*,
   No. 92–5198, 1994 WL 173806 (D.N.J. May 4, 1994) ........................................6, 10

*Mylan Institutional LLC v. Aurobindo Pharma Ltd.*,
   857 F.3d 858 (Fed. Cir. 2017)....................................................................................4

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
   572 U.S. 898 (2014).................................................................................................10

*Novartis Corp. v. Ben Venue Labs., Inc.*,
   271 F.3d 1043 (Fed. Cir. 2001)...................................................................................4

*OKI Am., Inc. v. Advanced Micro Devices, Inc.*,
   No. 04-03171, 2006 WL 2711555 (N.D. Cal. Sept. 21, 2006)....................................7

*PAICE LLC v. Toyota Motor Corp.*,
   504 F.3d 1293 (Fed. Cir. 2007)...................................................................................1

*SciMed Life Sys.* v. *Advanced Cardiovascular*,
   242 F.3d 1337 (Fed. Cir. 2001)...................................................................................2

*Talbert Fuel Sys. Patents Co. v. Unocal Corp.*,
  347 F.3d 1355 (Fed. Cir. 2003)......................................................................................1

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
  789 F.3d 1335 (Fed. Cir. 2015)....................................................................................10

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*,
  699 F.3d 1340 (Fed. Cir. 2012)......................................................................................8

Plaintiffs bear the burden of proof on infringement. The facts, law, and claim constructions show they cannot meet that burden, warranting summary judgment in favor of Defendants. On invalidity, even under the higher burden Defendants bear, the correct application of the law and facts (which remain largely unrebutted) support summary judgment. Plaintiffs ignore basic legal principles and present conclusory, often irrelevant, expert opinions to conjure genuine issues of material fact that do not exist to try to get to the jury on issues that cannot survive on the merits. Often, those opinions are riddled with incorrect applications of patent law and this Court's claim constructions. Plaintiffs' efforts are not sufficient to defeat summary judgment on the issues presented to the Court.

## I.     THE '078 PATENT IS NOT INFRINGED

### A.     Summary judgment of no literal infringement

Plaintiffs admit they "do not assert literal infringement." Pls.' Mem. of Law, ECF No. 101 at 10. Defendants are therefore entitled to summary judgment on their counterclaim of no literal infringement. Defs.' Answers, Defenses & Counterclaims, ECF No. 47 at ¶¶ 11-13.

### B.     Summary judgment of no infringement under DOE

#### 1.     Plaintiffs are precluded from relying on DOE as a matter of law

Defendants do not assert the mere recitation of numerical values in the claims forecloses DOE. ECF No. 101 at 12. They also do not rely on the *Festo* presumption, which is what the *Talbert Fuel* case Plaintiffs cite addresses.[1] *Talbert Fuel Sys. Patents Co. v. Unocal Corp.*, 347 F.3d 1355, 1358 (Fed. Cir. 2003). Instead, Defendants contend Plaintiffs are precluded from

---

[1] *PAICE LLC v. Toyota Motor Corp.*, 504 F.3d 1293 (Fed. Cir. 2007), is similarly inapposite as the patentee and alleged infringer used a microprocessor, not the distinguished, prior art human operator control system. *Id*. at 1310. In contrast, here, Plaintiffs seek to recapture precisely what they identified and criticized from the prior art—*e.g.*, lower temperatures and pressures.

recapturing through equivalents subject matter they "identified, criticized, and disclaimed" in the specification. Defs.' Mem. of Law, ECF No. 95 at 9-10.

This is Plaintiffs' second bid to recapture this subject matter. This Court has already rejected Plaintiffs' attempts in claim construction, finding that "the '078 Patent ***expressly distinguishes*** the claimed method from prior art CVD processes that utilize ***lower temperatures and pressures*** to synthesize diamond at a lower growth rate." ECF No. 46 at 22 (emphasis added). This same rationale applies under DOE, barring Plaintiffs' attempts to recapture the very parameters Defendants employ (e.g., lower temperatures and pressure). *SciMed Life Sys.* v. *Advanced Cardiovascular*, 242 F.3d 1337, 1346 (Fed. Cir. 2001).

### 2.     To the extent Plaintiffs can rely on DOE, no genuine issues preclude summary judgment

Plaintiffs bear the burden of proving infringement—here, on an accused process that differs from the claims in that it uses temperatures, pressures, and temperature gradients outside the claim ranges and produces diamonds with ████████████████████████. Rather than compare 2AT's process to the '078 Patent claims as the law requires, Plaintiffs try to create material issues of fact where none exist. Stripping away attorney argument and conclusory expert opinion reveals Plaintiffs' effort to (1) ignore this Court's claim constructions, (2) apply incorrect legal standards, and (3) rely on analysis and experiments completely divorced from 2AT's process.

As to the first issue, the Court explained in its construction of the term "growth surface" that "[s]ince the Patent uses the term to refer to the ***entire surface where hydrocarbon gases are accruing*** into new diamond, the claim construction must impart the same meaning." ECF No. 46 at 19 (emphasis added). Yet, Plaintiffs' expert applies a directly contradictory understanding, testifying: ███████████████████████████████████████████████

2

██████ Defs.' Resp. to Plaintiffs' SOF (*hereinafter* "RPSOF") ¶ 47 (emphasis added). There

can be no clearer example of an expert applying the wrong claim construction. Using that

incorrect understanding, Plaintiffs' expert picks and chooses what he contends is and is not the

growth surface to argue that 2AT's process results in only ███████████████████

██████ But a visual inspection of Defendants' products shows they do not meet the claims.

RPSOF ¶¶ 45, 46, 59.

The '078 Patent states that outcroppings or twins in the growth (i.e., non-monocrystalline

growth) can be verified visually. Pls.' Resp. to Defs.' Local Rule 56.1 Statement, ECF No. 103

¶ 15. ████████████████. *Id*. ¶ 70. ██████████████████████

██████████████████████████████████████████ RPSOF

¶¶ 45, 46; *see also* ECF No. 103 ¶¶ 15, 70, 71. Plaintiffs try to shift focus to techniques used to

determine whether a diamond contains only single-crystalline material. ECF No. 101 at 5.

Plaintiffs' argument about what is needed to confirm the ***absence*** of non-monocrystalline growth

when a material visually appears single-crystalline does not change the undisputed fact that

visual inspections suffice to confirm the ***presence*** of substantial non-monocrystalline growth.

RPSOF ¶¶ 45, 46. This red herring cannot raise a genuine issue of material fact.

Plaintiffs also try to dismiss the reality of 2AT's process by relying on ███████

████████████████████████████████████ "a

necessary byproduct of growing single-crystal diamond." ECF No. 101 at 3. ████████

██████. RPSOF ¶ 55. But the '078 Patent claims as construed require an insubstantial amount

of non-monocrystalline growth. ECF No. 46 at 19. That is what Plaintiffs represented to the

Patent Office to obtain their patent. Pictures alone show the stark difference between the

resultant products of the '078 Patent and 2AT. *See* ECF No. 95 at 2.

As to the second issue, rather than comparing the claims to the accused process, which is the relevant legal inquiry, Plaintiffs improperly compare 2AT's process to a hypothetical variant, divorced from the process the '078 Patent describes and claims. *Novartis Corp. v. Ben Venue Labs., Inc.*, 271 F.3d 1043, 1055 (Fed. Cir. 2001) (agreeing with the district court that the patentee's "computer model was insufficiently grounded in the specifics of the accused process" such that it "failed to create a genuine issue of fact" and affirming summary judgment of noninfringement). Plaintiffs also collapse the function-way-result test into two-parts, where the function and result is growing single-crystal diamond and the way is any MPCVD process. ECF No. 101 at 10-11. Such an oversimplification ignores the patent and claim limitations at issue. The claims recite specific temperatures, pressures, and temperatures gradient controls across the growth surface to produce a diamond with an insubstantial amount of non-monocrystalline growth. ECF No. 103 ¶ 3.

Plaintiffs' analysis also fails to consider that 2AT's process substantially differs from the process described and claimed in the '078 Patent. RPSOF ¶¶ 96, 98, 105; *see Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, 857 F.3d 858, 867 (Fed. Cir. 2017). Plaintiffs' experts confirm as much. Dr. Capano tried



." RPSOF ¶ 105.

. RPSOF ¶¶ 65, 105, 115; *see also id.* ¶ 96.

*Id.* ¶ 96.

Lastly, Plaintiffs' reliance on conclusory—and often irrelevant—expert opinions cannot rebut the undisputed factual evidence supporting Defendants' motion. *See Intellectual Science &*

*Tech., Inc. v. Sony Elecs., Inc.*, 589 F.3d 1179, 1184 (Fed. Cir. 2009) (holding "[a]n expert's unsupported conclusion on the ultimate issue of infringement will not alone create a genuine issue of material fact" and affirming summary judgment of non-infringement). Defendants do not contend experiments are immaterial to infringement. *See* ECF No. 101 at 7. Here, however, specific experiments of Plaintiffs' expert Dr. Capano are irrelevant for one simple reason: they are divorced from 2AT's process. Dr. Capano confirmed during his deposition that " ███████████████ ████████████████████████████ " RPSOF ¶ 65. He claims he ████████████████████ ██████████████████ . RPSOF ¶¶ 65, 74, 75. ████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████ . RPSOF ¶ 65. Further, these experiments used ██████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████ . RPSOF ¶¶ 65, 66. ████████████████ ██████████████████████████████████████████ . RPSOF ¶¶ 66, 74, 75. ███████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ██████████████████████████ RPSOF ¶¶ 66, 74, 75.

This is not a "battle of the experts," as Plaintiffs try to characterize it. ECF No. 101 at 7. The irrefutable factual evidence shows 2AT does not literally practice the '078 Patent claims or any equivalent thereof. ECF No. 103 ¶¶ 33-78. Plaintiffs' efforts to rely on conclusory and irrelevant expert opinions are not sufficient to manufacture a genuine issue of material fact sufficient to survive summary judgment.

**C.    2AT's extraterritorial conduct precludes infringement of the '078 Patent**

Plaintiffs do not dispute 2AT's rough diamonds are manufactured in Singapore or that

they accused all of Defendants' diamonds of infringing the '189 Patent by applying an annealing process. ECF No. 103 ¶¶ 25, 119. Nor do they dispute that annealing "improves the diamond's optical, electrical, thermal, and mechanical properties." ECF No. 101 at 2; *see also* ECF No. 103 ¶ 126. Plaintiffs instead try to avoid judgment by contending a "*diamond is still a diamond*" even after annealing. ECF No. 101 at 14 (emphasis in original). That is not the test. 35 U.S.C. § 271(g) (referring to whether a product is "***materially changed*** by a subsequent process," not whether the subsequent product leads to different product (emphasis added)). As Plaintiffs' opposition admits, diamond properties are changed by subsequent annealing processes; the '078 Patent even recognizes this. ECF No. 101 at 14.

When describing the '189 Patent, Plaintiffs explain that "[l]aboratory-grown diamonds can have flaws limiting their use" and tout the '189 Patent as addressing those flaws by "improving the optical clarity of *single-crystal CVD* diamond . . . by subjecting it to HPHT annealing conditions" resulting "in a more perfect diamond crystalline material, and improves the diamond's optical, electrical, thermal, and mechanical properties, increasing its value." *Id.* at 2 (emphasis in original). Those improved properties are material changes under § 271(g).

Improvement in optical clarity through HPHT annealing changes a diamond, giving it utility as jewelry it would not otherwise have. Such a physical property change effecting a change in utility is a "material change." *See Eli Lilly & Co. v. Am. Cyanamid Co.*, 82 F.3d 1568, 1577 (Fed. Cir. 1996). The cases Plaintiffs cite are inapposite; the subsequent processes there did not change the utility of the product.[2] And Plaintiffs' reliance on *Bio-Technology General Corp.*

---

[2] *Marion Merrell Dow, Inc. v. Am. Cyanamid Co.*, No. 92–5198, 1994 WL 173806, at *7 (D.N.J. May 4, 1994) ("simple derivates ha[d] the same basic utility as the direct product of the process"); *OKI Am., Inc. v. Advanced Micro Devices, Inc.*, No. 04-03171, 2006 WL 2711555, at *15 (N.D. Cal. Sept. 21, 2006) ("these changes do not impact the product of Allen process, a debris-free device"). Similarly, Plaintiffs' citation to the legislative history is misplaced as the

*v. Genentech, Inc.*, is similarly misplaced, as the Federal Circuit did not reach the issue of material change because "the product made by the patented process is not changed at all." 80 F.3d 1553, 1559-60 (Fed. Cir. 1996).

## II.     THE '078 PATENT IS INVALID

### A.     No enablement or written description of controlling temperature gradients

The inquiry before the Court is whether the '078 Patent provides a description that avoids undue experimentation and shows the inventors possessed the full scope of the invention as Plaintiffs seek to assert it—i.e., controlling temperature gradients across the growth surface by using either a substrate holder that ***does not*** makes thermal contact with the side surfaces of the diamond or one that does make such thermal contact. The specification describes only the latter, not the former, for controlling the temperature gradients. RPSOF ¶¶ 134, 136, 137. Yet, Plaintiffs broadly assert the claims against Defendants' process, ███████████████████ ███████████████ ECF No. 103 ¶ 39.

The law requires that a patent specification enable the full scope of the claims. Even the *Durel Corp. v. Osram Sylvania Inc.* case Plaintiffs cite (ECF No. 101 n. 11) sets forth this legal standard. 256 F.3d 1298, 1307 (Fed. Cir. 2001). Plaintiffs, however, mislead the Court by suggesting a different "any mode" standard when citing *Engel Indus., Inc. v. Lockformer Co.*, 946 F.2d 1528 (Fed. Cir. 1991). That case dealt with the abrogated "best mode" requirement, and the *Engel* court simply contrasted that requirement with enablement. *Id.* at 1533.[3]

---

metal strip *already* had certain unique properties, which were *not* affected by its subsequent use in a transformer. *See* S. Rep. No. 100-83 (1987).
[3] The rest of Plaintiffs' cases are inapposite. *Alcon Rsch. Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1188-89 (Fed. Cir. 2014) (finding the alleged infringer "failed to make the threshold showing that any experimentation is necessary to practice the claimed method"); *compare with* ECF No. 103 ¶¶ 98-115 and RPSOF ¶¶ 134, 136, 137, 164; *Transocean Offshore Deepwater Drilling, Inc. v. Maersk Drilling USA, Inc.*, 699 F.3d 1340,  355-56 (Fed. Cir. 2012) (finding the experimentation was not due to the difficulty of the system); *compare with* ECF No. 103 ¶¶ 98-

On the breadth of the claims, Plaintiffs fail to identify any part of the specification that enables and adequately describes their full scope. RPSOF ¶¶ 134, 136, 137. They also do not dispute all but two of Defendants' statement of facts. ECF No. 103 ¶¶ 99-114. As to the remaining two, Plaintiffs dispute them only in part, and in a manner not relevant to the enablement and written description inquiries. *See id*. ¶ 98 (█████████████████████████ ████████████████████████████████████████████████████████ ████████████████████████████"), ¶ 115.

Unable to avoid the facts, Plaintiffs try to recast them through attorney argument and conclusory expert opinions on "commercialization." ECF No. 101 at 18; ECF No. 102 ¶ 135-36. But when describing the '078 Patent, Plaintiffs contend that "the inventors were able to reduce defects and grow '*large, high quality diamonds* with increased growth rates.'" ECF No. 101 at 2 (emphasis added). Plaintiffs' own documents show it ████████████████████ ████████████████████████████████████████████████████████. *See* ECF No. 103 ¶¶ 1, 115; ECF No. 97-37 at CARN-PGD_00002637. The documents also show █ ████████████████████████████████████████████████████████ ██████████████████████████████. ECF No. 1-3 ¶112-13; RPSOF ¶ 165. The undue experimentation here was not tied to commercialization, but rather to produce exactly what Plaintiffs contend the '078 Patent achieves: "*large, high quality diamonds*.'" ECF No. 101 at 2 (emphasis added). That conclusion is confirmed █████████████ ████████████████████████████████████████████ ██████████. ECF No. 103 ¶¶ 99-114; RPSOF at ¶ 165. Plaintiffs' decision to broadly claim and

---

101, 109-113; *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1336 (Fed. Cir. 2003) (confirming that disclosure of one or two species may not enable a broad genus).

assert what the '078 Patent so narrowly describes necessarily leads to the patent's invalidity.

### B.       No written description of temperatures below 1000º C without oxygen

Plaintiffs cannot genuinely dispute that claims 12, 16, and 20 cover a temperature range of 900-1400º C, with and without oxygen. ECF No. 103 ¶¶ 3-4. Plaintiffs also cannot genuinely dispute that the specification only describes growth at temperatures below 1000º C when oxygen is used. *Id.* ¶ 17. Table 1 of the '078 Patent shows that at temperatures below 1000º C without oxygen the inventors grew "black diamond-like carbon," not the claimed single-crystal diamond. *Id*. "The added oxygen allows a lower growth temperature." ECF No. 97-1 at 14:34-37.

Plaintiffs seek to muddy the waters, referring to what a POSITA would "assume" based on "different overall process conditions." ECF No. 101 at 21. They also mischaracterize statements in Dr. Nebel's patent that issued 10 years after the '078 Patent. ECF No. 102 ¶ 146. But none of these efforts change the ultimate outcome. RPSOF ¶ 182. What remains clear is the claims cover a range of 900-1400º C, with and without oxygen, ECF No. 103 ¶¶ 3-4, but the specification only describes growth at temperatures below 1000º C with oxygen. *Id*. ¶ 17.

### III.    THE '189 PATENT CLAIMS ARE INVALID AS INDEFINITE

Plaintiffs do not dispute the claims require setting temperatures and pressures "outside of the diamond stable phase." ECF No. 101 at 22; *see also* RPSOF ¶ 184. Plaintiffs do not dispute that, at the time of the purported invention, the literature provided at least five different equations and resultant graphical lines for the diamond-graphite boundary. ECF No. 103 ¶ 113; ECF No. 102 ¶¶ 187, 189. Nor do Plaintiffs dispute the patent does not identify or provide any guidance as to which boundary line to use. ECF No. 103 ¶ 130. Most telling, Plaintiffs and their experts concede to "uncertainty" and "disagreement" in the scientific literature surrounding the diamond-graphite boundary. ECF No. 101 at 23; RPSOF ¶¶ 186-90. This alone supports summary judgment.

Plaintiffs disregard the law and contend a skilled artisan "would review the full body of literature to gain the necessary understanding of the boundary." ECF No. 101 at 23. They miss the issue entirely. Because the literature provided *differing* boundaries lines between the diamond and graphite phases (ECF No. 103 ¶ 113; ECF No. 102 ¶¶ 187, 189) and because the patent provided *no guidance* as to which line to use (ECF No. 103 ¶ 130), a skilled artisan would not know with reasonable certainty what the claims cover. *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1341 (Fed. Cir. 2015).[4] This is textbook indefiniteness. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 911 (2014).

## IV.   IF DEFINITE, THE '189 PATENT CLAIMS ARE NOT INFRINGED

Plaintiffs do not address Defendants' arguments regarding Dr. Capano's improper reliance on the diamond-graphite boundary from *Day* (a 2012 reference) to argue infringement of a 2002 patent. That alone warrants granting Defendants' motion. Plaintiffs also do not meaningfully dispute, to the extent a skilled artisan could identify a diamond-graphite boundary to use, it would have identified the boundary provided by *Bundy* (1996). *Bundy*, which was co-authored by two of the named inventors of the '189 Patent in 1996 (ECF No. 103 ¶ 136), presented the entire phase diagram of carbon as it was understood at the time. RPSOF ¶ 200. Since *Bundy* was the last to be proposed before the priority date of the '189 Patent and was co-authored by two of the named inventors, it would be the most relevant authority. *See* ECF No. 103 ¶ 133; *see* ECF No. 101 at 25. ███████████████████████████████████. ECF No. 103 ¶ 144; RPSOF ¶ 200.

---

[4] *Teva*, *Dow*, and *Honeywell* were all in the (bio)chemistry field, and all found indefiniteness. *Teva*, 789 F.3d at 1338 (copolymer); *Dow Chem. Co. v. Nova Chems. Corp.*, 803 F.3d 620, 631 (Fed. Cir. 2015) (ethylene polymer compositions); *Honeywell Int'l, Inc. v. Int'l Trade Comm'n*, 341 F.3d 1332, 1335 (Fed. Cir. 2003) (polyethylene terephthalate yarn).

Dated:  November 4, 2020          Respectfully submitted,

                                   s/ William P. Deni, Jr.
                                   William P. Deni, Jr.
                                   J. Brugh Lower
                                   **GIBBONS P.C.**
                                   One Pennsylvania Plaza, 37th Floor
                                   New York, New York 10119
                                   Tel: (212) 613-2000
                                   Fax: (212) 290-2018
                                   wdeni@gibbonslaw.com
                                   jlower@gibbonslaw.com

                                   Anand K. Sharma (*pro hac vice*)
                                   Gerald F. Ivey (*pro hac vice*)
                                   Cecilia Sanabria (*pro hac vice*)
                                   J. Preston Long (*pro hac vice*)
                                   Karthik Kumar (*pro hac vice*)
                                   Amy Fulton (*pro hac vice*)
                                   **FINNEGAN, HENDERSON, FARABOW,**
                                   **GARRETT & DUNNER, LLP**
                                   901 New York Avenue, NW
                                   Washington, DC 20001
                                   Tel: (202) 408-4000
                                   Fax: (202) 408-4400

                                   *Attorneys for Defendants*
                                   *Pure Grown Diamonds, Inc.*
                                   *and IIa Technologies Pte. Ltd.*